AIRWAY UNDERWRITERS *vs.* GEORGE H. PERRY & others.[1]

Bristol. April 6, 1972. — June 16, 1972.

Present: TAURO, C.J., SPIEGEL, BRAUCHER, & HENNESSEY, JJ.

*Insurance*, Disclaimer of liability, Fraud of insured, Coöperation by insured, Aircraft insurance.

Where it appeared that an insurance company had issued a policy insuring against personal liability and physical damage to the insured's aircraft, which recited that the insured was the sole owner of the aircraft and contained, in addition to the usual coöperation clause, a provision that the policy would be void if there were fraud or misrepresentation by the insured; that, shortly after the issuance of the policy, the insured, without the knowledge of the company, sold the aircraft and thereafter conspired with the buyer and the buyer's husband in an attempt to defraud the company with respect to claims arising out of an accident to the aircraft; and that the insured failed to coöperate with the company which had undertaken the defence of the buyers' actions under a non waiver agreement and which later withdrew from the case, the company was under no obligation to pay the judgments obtained against the insured. [167–168]

BILL IN EQUITY filed in the Superior Court on October 25, 1966.

The suit was heard by *Cahill, J.*

*Edward A. Roster* for Basil W. Gilbert & others.
*Franklin N. Cunningham* for the plaintiff.

HENNESSEY, J. In this bill for declaratory relief, the plaintiff seeks a declaration that it is under no obliga-

[1] The other defendants are Basil W. Gilbert, his wife Joyce M. Gilbert, and his son Martin Gilbert.

tion to pay all or any part of certain judgments obtained against its former insured, the defendant Perry, by the defendants Gilbert. From a decree granting the relief prayed for, the Gilberts appeal.

Based upon the judge's findings and the transcript of the evidence, which we have before us, the facts are here set forth. In 1960, and prior thereto, Perry was engaged in the operation of an airport under the name of Narragansett Airways. In December, 1959, the plaintiff issued to Perry a "fleet reporting" type insurance policy on his Narragansett Airways operation. This policy was terminated on June 1, 1960, by the plaintiff because of premium collection difficulties and problems arising out of mixing owned and unowned airplanes. On June 2, 1960, the plaintiff agreed that upon receipt of premium it would issue new coverage for Perry on three specified aircraft on a "specified plane" basis only.

The new policy, which was issued on June 10, 1960, insured against physical damage to the aircraft, and also provided personal injury liability coverage. The policy recited, "George H. Perry d/b/a Narragansett Airways" as the named insured and further recited that "[t]he named Insured is the sole owner of the aircraft . . . and loss, if any, . . . shall be payable . . . to the named Insured and: Fall River National Bank." At the time of the issuance of the policy, the aircraft were mortgaged to the Fall River National Bank, the named loss payee. The policy also contained the usual coöperation clause and further stated that "[t]his policy shall be void if the named Insured has concealed or misrepresented any material fact or circumstance . . . or in case of any fraud . . . whether before or after a loss."

The evidence discloses that on or about June 15, 1960, Perry sold one of the insured aircraft to Joyce Gilbert. A portion of the purchase price was paid from the proceeds of a bank loan which was protected by a security interest in the aircraft. All steps necessary to complete the sale including transfer of title by bill of

sale and partial release of the security interest held by the Fall River National Bank were completed and Mrs. Gilbert registered the aircraft in Massachusetts as her own. However, since Mrs. Gilbert did not register the bill of sale with the Federal Aviation Administration, the records of that agency continued to show the aircraft as registered in Perry's name. The evidence establishes that the plaintiff was never informed of the transfer of title.

On July 9, 1960, the aircraft crashed in Crawford Notch, New Hampshire, while being piloted by Mrs. Gilbert. Her husband and son together with a family friend were passengers in the aircraft. Mrs. Gilbert sustained severe personal injuries including brain damage while her husband and son were less severely injured. After the crash Perry notified the plaintiff that an accident had occurred due to an extreme downdraft. It was at this time that the plaintiff discovered that the aircraft was registered in Massachusetts in Mrs. Gilbert's name.

The judge warrantably found that after the accident Perry actively consulted and advised the Gilberts, his long time friends, as to how they could collect on the insurance policy. He sent them to his personal attorney for advice and counsel. He secured the original policy of insurance, sealed it in an envelope and gave it to Basil Gilbert to deliver personally to another attorney located in Boston. Shortly thereafter, on or about February 23, 1962, Perry left Massachusetts and for several years his whereabouts were unknown to his wife or attorney.

In March, 1962, the attorney to whom Perry had referred the Gilberts commenced actions against Perry on behalf of the Gilberts. Service of process was made on Perry at his last and usual place of abode. The papers were forwarded by Perry's wife to the plaintiff which promptly returned them to her stating that according to their records Perry was not the owner of the aircraft at the time of the accident. Perry's wife then

turned the papers over to his personal attorney who entered general appearances on behalf of Perry.

In August, 1962, the plaintiff's investigators located Perry in Texas. The plaintiff thereupon advised Perry of the pending actions and told him that they would undertake his defence pursuant only to a nonwaiver agreement. The agreement was executed on September 27, 1962. Subsequently, Perry changed his address and had to be located again by investigators. At this time and in preparation for Perry's defence, the plaintiff prepared an affidavit which Perry refused to sign. Perry again disappeared and in December, 1964, the plaintiff advised Perry's personal attorney that it was withdrawing from the case. After a jury trial, judgments in substantial amounts of money were entered for the Gilberts against Perry. Subsequent efforts to locate Perry did not succeed until after the law actions had gone to judgment and executions had issued.

On the basis of the above evidence the judge concluded that the plaintiff had no duty to defend Perry because at the time of the accident the aircraft was not covered by any insurance policy issued by the plaintiff and further, because of "Perry's conduct both before and after the crash when Perry failed to cooperate fully with Airway and when he went far beyond such lack of cooperation and actively engaged in fraudulent conduct, the purpose of which was to assist his friends the Gilberts in collecting from Airway compensation on claims they were not legally entitled to maintain against Airway." The judge also concluded that Basil Gilbert, acting individually and as agent for his wife and son and in concert with Perry, "attempted to defraud . . . [Airway] with respect to claims arising out of the accident of July 9, 1960.

The findings of the judge are not to be set aside unless plainly wrong. *Barnum* v. *Fay*, 320 Mass. 177, 180. We have reviewed the evidence and conclude that the judge's findings are amply supported by the evidence. Consequently, the final decree was proper in all respects.

According to the terms of the policy, the named insured, George H. Perry d/b/a Narragansett Airways, "is the sole owner of the aircraft . . . and loss, if any, . . . shall be payable . . . to the named Insured and: Fall River National Bank." However, the judge was warranted in finding that prior to the time of the accident Perry had transferred ownership of the aircraft to Joyce Gilbert, that the latter had registered the aircraft in Massachusetts as her own and that Perry did not inform the plaintiff of the change in ownership. On these facts alone, the plaintiff was relieved of any obligation to appear and defend Perry. *Faris* v. *Travelers Indem. Co.* 278 Mass. 204, 206–209.

The defendants rely upon the familiar rule that when a tort action against an insured is apparently within the terms of the policy, the insurer, whether it defends the action or refuses, is bound by the judgment in such action as to all material facts decided therein including the determination of ownership. *Jertson* v. *Hartley,* 342 Mass. 597, 603. That rule, however, is inapposite to the present case wherein the judge found that the judgment against Perry was procured by the fraud and collusion of Perry acting in concert with the Gilberts. "[I]t has always been the law of this Commonwealth that a surety or indemnitor could avoid a judgment rendered against the principal or indemnitee, by showing that it was procured by collusion or fraud." *Fister* v. *Carr & Gen. Ins. Corp. Ltd.* 304 Mass. 458, 460, and cases cited.

Even assuming that the aircraft was covered by the plaintiff's insurance policy on the date of the accident, Perry's disappearance and lack of coöperation with the plaintiff and his active assistance to the Gilberts in prosecuting the actions against him relieved the plaintiff of any obligation to appear and defend him, or to indemnify him. *Polito* v. *Galluzzo,* 337 Mass. 360, 363–366. *Morrison* v. *Lewis,* 351 Mass. 386, 390.

*Decree affirmed with costs of appeal.*