## LOUIS DIMARZO vs. AMERICAN MUTUAL INSURANCE COMPANY.

Plymouth. October 7, 1982. — May 4, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

Consumer Protection Act, Insurer, Assignment of claim, Damages, Attorney's fees. Insurance, Motor vehicle liability insurance, Waiver. Waiver. Damages, Consumer protection case. Statute, Amendment, Construction. Evidence, Trade usage, Business record.

In an action against a motor vehicle liability insurer brought under G. L. c. 93A, the Consumer Protection Act, the evidence warranted a finding that the insured had validly assigned his claim to the plaintiff. [93-94]

Entry of judgment in a tort action against an insured, in an amount exceeding the limits of his motor vehicle liability insurance policy, following his insurer's refusal to settle the claim within the policy limits constituted a "loss [to the insured] of money or property" sufficient to satisfy the requirements of G. L. c. 93A, § 9, as in effect prior to its amendment by St. 1979, c. 406, § 1, irrespective of whether the judgment was satisfied. [94-95]

Refusal by a motor vehicle liability insurer to settle a claim within the limits of an insurance policy in the circumstances deprived the insured of his contractual right to payments so as to constitute a "loss of money or property" within the contemplation of G. L. c. 93A, § 9, as in effect prior to its amendment by St. 1979, c. 406, § 1. [95]

In an action under G. L. c. 93A, the Consumer Protection Act, against a motor vehicle liability insurer, the possibility that the insurer's conduct might have been permitted either by statute [95-97] or by one interpretation of the insurance policy [97] was not conclusive on the issue of bad faith or unfairness.

Evidence at the trial of an action under G. L. c. 93A, the Consumer Protection Act, against a motor vehicle liability insurer would have permitted the judge to find that the insurer's acts respecting the settlement of a claim under a policy of insurance fell outside the exemption provided by c. 93A, § 3 (1) (a). [96-97]

Evidence at the trial of an action under G. L. c. 93A, the Consumer Protection Act, against a motor vehicle liability insurer warranted conclu-

sions that the insurer acted in bad faith in deducting from the coverage limits of an insurance policy the amount of personal injury protection benefits paid to a claimant by a different insurer and in offering to settle the claim only in the lesser amount. [97-99]

Evidence at the trial of an action under G. L. c. 93A, the Consumer Protection Act, against a motor vehicle liability insurer warranted the judge's finding that the insurer had acted in bad faith in offering a settlement in an amount substantially less than the policy limits after the claimant had recovered a judgment against the insured exceeding the policy amount, where, in the circumstances, the insurer knew that it had waived the defense of noncooperation and had failed effectively to reserve its right to disclaim liability. [99-100] O'CONNOR, J., concurring.

A judge's finding that a motor vehicle liability insurer's failure to settle a claim within the policy limits resulted in exposure of the insured to liability exceeding the policy amount was not clearly erroneous, in light of the claimant's testimony that he would have accepted an offer of a settlement in the amount of the policy. [100-101]

In an action under G. L. c. 93A, the Consumer Protection Act, against a motor vehicle liability insurer the plaintiff was not limited to a recovery of the amount shown on the face of the policy in question, but was entitled to recover all losses which were the foreseeable consequences of the insurer's unfair or deceptive act or practice. [101] HENNESSEY, C.J., joined by NOLAN, J., concurring.

In an action against an insurer, the amount recoverable on a count to reach and apply the amount payable under a policy of insurance should not have been included as part of the damages recoverable on counts under G. L. c. 93A, either as part of the award or as the basis for multiple damages. [101-102]

Where a tender of settlement under G. L. c. 93A, § 9 (3), by the defendant in a consumer protection action was based upon contentions that were later rejected by the judge, namely that the plaintiff had not demonstrated a loss of money or property and that his damages should be limited to a lesser amount, the judge did not err in finding that the tender of settlement was unreasonable. [102]

The judge in a civil action did not abuse his discretion in refusing to place before the jury the text of a statutory amendment, where it appeared that the text would be unhelpful to them. [102-103]

At the trial of an action under G. L. c. 93A, the Consumer Protection Act, against a motor vehicle liability insurer it lay within the judge's discretion to admit evidence respecting custom and usage in the insurance industry as bearing on the issue whether the insurer acted in good faith [103-104], and the judge's conclusion that certain witnesses were qualified to testify as experts on this subject was supported by the evidence [104-105].

At the trial of a civil action, the judge properly excluded from evidence certain documents sought to be admitted as business records under G. L. c. 233, § 78, where he had reason to question whether the documents were prepared in good faith and where the documents lacked sufficient indicia of reliability to bring them within the ambit of the statute. [105-106]

In an action under G. L. c. 93A, the Consumer Protection Act, no abuse of discretion or other error appeared in the judge's award of attorneys' fees to the successful plaintiff. [106-108]

CIVIL ACTION commenced in the Superior Court Department on January 17, 1979.

The case was tried before *Prince*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Phillip M. Davis* (*Stephen J. Andrick & D. Alice Olsen* with him) for the defendant.

*Michael E. Mone* (*Patricia L. Kelly* with him) for the plaintiff.

LIACOS, J. - The defendant, American Mutual Insurance Company (American Mutual), appeals from a judgment for damages, attorneys' fees, and costs. Following a jury trial, a judge of the Superior Court found that American Mutual had committed unfair or deceptive acts or practices by refusing to settle the tort claim of the plaintiff Louis DiMarzo for the limits of its motor vehicle liability insurance policy. DiMarzo had claimed that American Mutual's insured, William J. MacDonald, was liable for DiMarzo's injuries. The judge awarded double damages and attorneys' fees to MacDonald's assignee, Louis DiMarzo, under G. L. c. 93A, §§ 2, 9. We vacate the judgment and remand the case for entry of a modified judgment in accordance with this opinion.

The facts giving rise to this appeal are as follows. On June 25, 1971, DiMarzo sustained serious injuries as a result of an automobile accident caused by MacDonald. As a result of the accident, DiMarzo incurred substantial medical expenses. DiMarzo received $2,000 in Personal Injury Protection (P.I.P.) benefits from his own insurance company, Provi-

dence Washington Insurance Company (Providence Washington), and brought suit in 1971 against MacDonald to recover damages of $500,000 for his injuries.

At the time of the accident, MacDonald was insured by a policy issued by American Mutual. This policy provided bodily injury coverage in the amount of $20,000 a person. The policy contained the usual provisions obligating American Mutual to defend MacDonald against any claims arising out of his operation of the insured automobile, and required MacDonald to cooperate with American Mutual in defending any such claim.

American Mutual investigated the accident. It determined that MacDonald was liable to DiMarzo, and that DiMarzo's damages exceeded the policy limits. It recognized that it had an obligation to offer the policy limits in settlement of DiMarzo's claim so as to avoid exposing MacDonald to liability in excess of those limits. American Mutual took the position, however, that only $18,000 coverage remained on the policy because of the $2,000 payment made to Providence Washington to reimburse Providence Washington for the P.I.P. payments it made to DiMarzo. American Mutual therefore made an offer of settlement for $18,000 in April, 1973.[1] This offer was rejected.

In February, 1976, a master's hearing was scheduled on the tort action by DiMarzo against MacDonald. American Mutual's counsel, Thomas F. Quinn, mailed a certified letter concerning the hearing to MacDonald at 430 Warren Avenue in Brockton. Mr. Quinn had sent two previous letters to MacDonald at the same address. The first letter, asking MacDonald to appear at a deposition, had been sent by certified mail. The return was signed by a person other than the insured. MacDonald did not appear for the deposition. The second letter, sent to the same address two weeks later, was returned unclaimed. The third letter,

---

[1] American Mutual determined later that only $17,800 remained on the policy due to the payment of an additional $200 for "unallocated expenses" to Providence Washington.

relative to the scheduled master's hearing, was returned unclaimed. MacDonald did not appear at the hearing. The hearing proceeded, and the master found for DiMarzo in the amount of $75,000.

The tort case subsequently was scheduled for a jury trial. Throughout this period, the parties discussed the possibility of a settlement. DiMarzo indicated that he would be willing to settle for $20,000, the face amount of the policy. American Mutual insisted that only $17,800 coverage remained on the policy and refused to offer more. On March 7, 1977, American Mutual filed a complaint for a declaratory judgment concerning the amount of coverage available under the policy. While this complaint was scheduled for hearing, it apparently never was heard.

The tort case went to trial on September 19 and 20, 1977. During that trial, Mr. Quinn stated for the first time that American Mutual was proceeding under a reservation of rights.[2] The attorneys for the parties discussed the possibility of a settlement. No agreement was reached. While the jury were deliberating, Mr. Quinn withdrew American Mutual's offer to settle for $17,800. The jury returned a verdict in the amount of approximately $104,000, which, with interest and costs, resulted in a judgment and execution for $149,068.78. The execution was sent to Mr. Quinn.

On December 12, 1977, Mr. Quinn sent a letter to American Mutual stating that American Mutual should not pay the execution. He stated that American Mutual now was liable only for the minimum $5,000 statutory coverage. He recommended that an offer of $2,800 be made (the minimum statutory coverage, minus the P.I.P. payment). A district claim manager agreed and recommended offering the minimum statutory coverage, less the P.I.P. payment,

---

[2] Before the jury trial, Mr. Quinn again sent letters to MacDonald at the Warren Avenue address. These were returned. Mr. Quinn also instructed the Plymouth County deputy sheriff to subpoena MacDonald to the trial. He directed the sheriff to serve the subpoena at the same Warren Avenue address and requested him to look for MacDonald at the county jail. MacDonald did not appear.

"under the guise that we are disclaiming relative to the insured's noncooperation." Accordingly, American Mutual authorized Mr. Quinn to extend an offer of $2,800, and he did so on May 27, 1978. DiMarzo rejected the offer.

In December, 1978, DiMarzo hired a private investigator to locate MacDonald. The investigator was instructed to tell MacDonald that if he executed an assignment of his rights and claims against American Mutual, DiMarzo would release him from all liability. After a week-long search, the investigator located MacDonald, and MacDonald executed the assignment.

DiMarzo then brought the present action against American Mutual individually and as MacDonald's assignee. Pursuant to G. L. c. 93A, § 9, a thirty-day written demand for relief was sent to American Mutual on behalf of DiMarzo. American Mutual responded by denying liability but offered $50,000 in settlement of all the claims of DiMarzo and of MacDonald. The offer was rejected. DiMarzo amended his complaint to add counts under G. L. c. 93A, §§ 2 & 9.

As finally amended, DiMarzo's complaint contained seven counts. Under count one, DiMarzo sought to reach and apply the full proceeds of the policy issued by American Mutual to MacDonald. Under count two, he sought damages as MacDonald's assignee for breach of contract. Under count three, he sought damages, as MacDonald's assignee, for failure to settle in good faith the tort claim against MacDonald. Under count four, he sought damages, as MacDonald's assignee, for failure to settle DiMarzo's claim with due care. Under count five, he sought multiple damages individually for violations of G. L. c. 176D, § 3 (9), and G. L. c. 93A, §§ 2 & 9. Under count six, he sought multiple damages, as MacDonald's assignee, for wilful and knowing violations of c. 93A, §§ 2 & 9. DiMarzo also sought reasonable attorneys' fees under each count.[3]

---

[3] DiMarzo waived the seventh count in open court.

The case went to trial before a jury on January 16, 1981.[4] The judge submitted written questions to the jury, and the jury made written findings under Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), as follows. First, American Mutual acted in bad faith by refusing to pay $20,000 and by maintaining that the payment to Providence Washington reduced the amount of insurance available under the policy to pay any judgment or settlement on behalf of MacDonald to DiMarzo. Second, American Mutual acted in bad faith by offering $2,800 after DiMarzo had secured the execution. Third, the conduct in bad faith of American Mutual proximately caused damage to MacDonald by exposing him to liability in excess of the limits of his policy. Fourth, MacDonald did not cooperate with American Mutual in accordance with the provisions of the policy, but American Mutual waived the defense of noncooperation and failed to assert a valid reservation of its right to disclaim liability. Fifth, MacDonald executed a valid assignment of his rights against American Mutual to DiMarzo.[5] The judge found the answers consistent.

The judge then conducted a hearing on counts one, five, and six. He filed his findings, rulings, and orders for judgment on August 24, 1981.[6] The judge adopted the answers to the special questions and made findings of fact consistent with the jury's answers. He found first that each failure to settle DiMarzo's claim for the policy limits after American Mutual had determined that MacDonald's liability extended

---

[4] Under an order issued by the judge, the issues raised by counts two, three, and four were tried before a jury. Following the jury verdict, both parties waived any right to a jury trial on the remaining issues, and counts one, five, and six were tried before the judge.

[5] Since they answered the first two questions in favor of DiMarzo, the jury were not required to decide whether American Mutual acted negligently by failing to settle DiMarzo's claim.

[6] The judge had made findings prior to August 24, which included findings that American Mutual committed unfair or deceptive acts or practices (1) by asserting in open court at the jury trial of Louis DiMarzo vs. William J. MacDonald that it had a valid reservation of rights, and (2) by asserting in the present action that it had a valid reservation of rights.

beyond the policy limits constituted an unfair or deceptive act or practice which damaged DiMarzo both individually and as MacDonald's assignee. Second, he found that American Mutual refused to settle solely because of its insistence that the policy limits had been reduced to $17,800 and not because MacDonald failed to cooperate. Third, he found that DiMarzo complied with the procedural requirements of a written demand for relief under c. 93A, § 9 (3). Fourth, he found that MacDonald's assignment of his rights to DiMarzo was valid and included any rights MacDonald had under c. 93A. Fifth, the judge found that American Mutual's written tender of settlement was not reasonable, that American Mutual committed wilful and knowing violations of c. 93A, § 2, by refusing to settle for the policy limits; that American Mutual's refusal to grant adequate relief on demand was in bad faith with knowledge or reason to know that the act or practice complained of violated c. 93A, § 2; that DiMarzo was entitled to double damages in the amount of $386,716.06, based on the amount of the execution ($149,068.28) plus interest ($44,289.75); and that the award had an independent basis under either count five or six. Sixth, the judge found that, under counts five or six, DiMarzo was entitled to attorneys' fees of $71,962, plus costs of $2,392.50. Seventh, the judge found that DiMarzo is entitled to reach and apply the full proceeds of the policy with interest from the date of the execution; that a counterclaim asserted by American Mutual was frivolous and was not advanced in good faith; and that DiMarzo is entitled, under G. L. c. 231, § 6F, to attorneys' fees of $6,667 with interest from the date of the execution. The judge also made several rulings of law and issued an order for judgment.

On October 28, 1981, judgment was entered consistent with the trial judge's findings. A ruling by the judge provided that any execution which issued in the case "shall not exceed the actual damage doubled, plus counsel fees awarded, and interest and costs." American Mutual filed a notice of appeal. We granted DiMarzo's application for direct

appellate review. American Mutual now raises numerous issues of fact and law. We consider only those issues necessary to our decision.

I. *Recovery Under the Prior Version of G. L. c. 93A, § 9, as MacDonald's Assignee.*

We consider first whether DiMarzo can recover under c. 93A, § 9, as it existed prior to October 18, 1979.[7]

A. *The validity of the assignment.* American Mutual argues that the assignment is void because MacDonald did not understand the nature of the instrument which he signed.[8] The difficulties with American Mutual's position are many. First, there is authority that, in the absence of fraud, an instrument is not void merely because the party signing it did not understand fully the consequences of his signature. *Cohen* v. *Santoianni,* 330 Mass. 187, 193 (1953). Second, to

---

[7] Statute 1979, c. 406, § 1, effective October 18, 1979, amended c. 93A, § 9, to afford a remedy to any person who has been "injured" by another person's unfair or deceptive act or practice. MacDonald's cause of action arose before the amendment's effective date, and his assignee DiMarzo must therefore meet the requirements of the prior version of § 9. The earlier version of c. 93A, § 9, required a plaintiff, inter alia, to have been a "purchaser" of goods, services, or property for personal purposes. See *Murphy* v. *Charlestown Sav. Bank,* 380 Mass. 738, 742-743 (1980). This requirement has been removed by St. 1979, c. 406, § 1. It is clear, in any event, that MacDonald was a purchaser of services and property for personal purposes, *Dodd* v. *Commercial Union Ins. Co.,* 373 Mass. 72, 81-82 (1977), and hence the difference between the two versions significant here is that DiMarzo must show under c. 93A, § 9, as amended through St. 1973, c. 939, that MacDonald suffered a "loss of money or property," a requirement also deleted by St. 1979, c. 406, § 1. This requirement, however, is still contained in c. 93A, § 11.

[8] In its main brief, American Mutual argues that claims under the prior version of c. 93A, § 9, were not assignable. Our holding in *Raymer* v. *Bay State Nat'l Bank,* 384 Mass. 310, 314 (1981), that a "claim under G. L. c. 93A is a claim for loss of money or property and is assignable even if it is thought to sound in tort," is to the contrary. We note, also, that the overwhelming weight of authority favors the assignment of an insured's right of recovery against the insurer for the wrongful refusal to settle a claim within the policy limits. See Annot., 12 A.L.R.3d 1158 (1967 & Supp. 1982). In its reply brief American Mutual appears to concede the point but argues that DiMarzo has not demonstrated that MacDonald suffered a "loss of money or property." We consider that argument in the text.

the extent that the circumstances surrounding the execution of the assignment may have been objectionable, the assignment would be not void, but voidable only at the election of MacDonald. See *Krasner* v. *Berk,* 366 Mass. 464, 468 (1974). 4 A. Corbin, Contracts § 893, at 587-588 (1951). American Mutual is therefore barred from challenging the validity of the assignment on such grounds.

More importantly, both the judge and the jury found the assignment to be valid. Their finding is supported by the record. There was evidence which indicated that the investigator who procured the assignment explained fully the consequences of the release. While MacDonald's testimony indicated that he may not have understood completely the nature of the assignment, his testimony was not altogether consistent and indicated that he did not have a clear recollection of the evening when he executed the assignment. He did not testify to any facts which require a finding that his signature was procured by fraud or duress. MacDonald testified at trial that he would be willing to sign the assignment again. The jury's finding that the assignment was valid is amply supported by the evidence.

B. *Loss of money or property.* American Mutual contends that MacDonald had no rights to assign under c. 93A, § 9, because MacDonald did not suffer a "loss of money or property" as was required by § 9 (1), as amended through St. 1973, c. 939. A similar contention was rejected in *Smith* v. *Caggiano,* 12 Mass. App. Ct. 41 (1981), and we find the reasoning of that case persuasive. The *Smith* court held that the entry of a judgment against a person constituted a loss of money. "The judgments have established a debt, execution may issue on those judgments, and anyone inquiring into the financial status of the plaintiffs subject to the judgments would, realistically, consider each of them poorer by the amount of the judgment rendered." *Id.* at 44. Contrary to the suggestion of American Mutual, the mere fact that DiMarzo did not "aggressively" pursue McDonald does not distinguish *Smith* from the instant case.

The loss does not turn on whether the judgment has been satisfied. See *id.* at 44-45.[9]

Additionally, MacDonald suffered a loss of property as well as money. By refusing to settle the case for $20,000, American Mutual effectively reduced the value of the policy by $2,200. The purchaser of an insurance policy acquires a contractual right to payment, a form of personal property. *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 81 (1977). In the circumstances of this case, MacDonald suffered a loss of property by American Mutual's refusal to recognize the full extent of MacDonald's property interest. Cf. *Wolfberg* v. *Hunter*, 385 Mass. 390, 398 (1982) (interference with contractual right to the use of property constituted a loss of property).

C. *Unfair or deceptive acts.* American Mutual determined, soon after the accident between DiMarzo and MacDonald, that MacDonald was potentially liable for damages far in excess of the policy limits of $20,000. American Mutual concedes that it had an obligation to offer DiMarzo whatever coverage existed under the policy. It argues, however, that the evidence requires a finding that it believed in good faith that the coverage under the policy had been reduced by the payment of P.I.P. benefits and, later, by MacDonald's failure to cooperate. American Mutual claims that since the terms of the applicable statute, G. L. c. 90, § 34M, entitled it to deduct the P.I.P. payment from the amount of the coverage available, the finding that it acted in bad faith was erroneous.

---

[9] American Mutual also argues that MacDonald was insolvent and therefore could not have suffered a loss of money or property as a result of the execution entered against him. The record does not compel a finding that MacDonald was insolvent. Thus, we need not decide whether insolvency would preclude a finding that a person suffered a loss of money or property. We note, however, that insolvency of the insured would not bar an action against the insurer for violating its duty to act in good faith to settle within the policy limits. *Jenkins* v. *General Accident Fire & Life Assurance Corp.*, 349 Mass. 699, 702 (1965).

The express language of the statute did not require the deduction of P.I.P. benefits from the coverage available.[10] At best, the claim of American Mutual reduces to an argument that it took one possible view of the meaning of the statute.[11] Moreover, we have rejected the proposition that an act or practice which is authorized by statute cannot constitute an unfair or deceptive practice under c. 93A, § 2 (*a*). *Schubach* v. *Household Fin. Corp.*, 375 Mass. 133, 137 (1978). The central inquiry is "the effect of the conduct on the public," and "[t]he fact that particular conduct is permitted by statute or by common law principles . . . is not conclusive on the question of unfairness." *Id.* Thus, it was for the trier of fact to determine if the conduct was an unfair or deceptive act or practice.

American Mutual's claim of an exemption under c. 93A, § 3 (1) (*a*), is also without merit. This section, inserted by St. 1967, c. 813, § 1, provides that c. 93A does not apply to "transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States." Whether the acts here were permitted under laws as administered by the Commissioner of Insur-

---

[10] While DiMarzo has not argued the point in this manner, we do not believe that the relevant provisions of the statute and policy permitted the deduction of P.I.P. payments. Under G. L. c. 90, § 34M, MacDonald was exempt from any tort liability to the extent that DiMarzo received any P.I.P. payments. Thus, MacDonald could never become legally obligated to pay the first $2,000 of damages incurred by DiMarzo. By the terms of the policy, the $20,000 of coverage was to be applied against any sum which MacDonald became "legally obligated" to pay as damages because of bodily injury. The payment by American Mutual to Providence Washington was not to satisfy a claim which MacDonald was "legally obligated" to pay. Thus, the full amount of the policy remained available for settlement. That payment constituted a distinct duty created by statute. G. L. c. 90, § 34M, fifth paragraph, second sentence.

We do not rely on this analysis, however, because it was not presented below. Rather, DiMarzo predicated his case on a showing of subjective bad faith which both the judge and jury found.

[11] But see note 10, *supra*. Also, other insurance companies and the Commissioner of Insurance adopted a different reading.

ance within the § 3 (1) (a) exemption is initially a matter for determination at trial. *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 53 (1979). We conclude that there was sufficient evidence from which the judge could have found that the actions taken here fell outside the exemption.

We also reject American Mutual's claim that the terms of its policy authorized it to deduct the amount of the P.I.P. benefits. Again, American Mutual advances one possible interpretation of the standard form policy, which was rejected by the insurance industry.[12] To the extent that American Mutual relies on common law principles of subrogation, the language of *Schubach* v. *Household Fin. Corp.*, *supra*, explicitly states that common law principles are not conclusive on the issue of unfairness. In these circumstances, the terms of the policy are not conclusive, but are merely factors which the trier of fact was entitled to consider on the issue of bad faith. See *Penney* v. *First Nat'l Bank*, 385 Mass. 715, 721 (1982); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-105 (1977).

We turn now to consider whether the findings as to bad faith were warranted. American Mutual does not challenge that the breach of an insurer's duty to act in good faith to settle a claim brought against an insured within the policy limits, see *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 186-187 (1959), provides a sufficient basis for recovery under c. 93A, § 9. Rather, it argues that there was insufficient evidence to support the findings that it acted in bad faith by offering less than the policy limits of $20,000 in settlement. We disagree. The evidence warranted the conclusion that American Mutual acted in bad faith and did not have a bona fide belief in the reasonableness of its position.

First, there was ample evidence from which the judge could have concluded that American Mutual acted in bad faith by reducing the coverage available under the policy by the amount of P.I.P. benefits. DiMarzo introduced in evi-

---

[12] This interpretation is of dubious validity, as we point out in note 10, *supra*.

dence General Notice No. G-624, entitled, "Uniform Claims Settlement Practices for No-Fault Insurance," issued by Massachusetts Automobile Rating and Accident Prevention Bureau, a liaison group between certain insurance companies doing business in Massachusetts and the Commissioner of Insurance. This advisory notice, dated October 6, 1972, provided "that as between an injured person and a subrogating P.I.P. carrier, if one must suffer loss of available limits it should be the carrier; the policy limits should always be available to the public." A representative of American Mutual, Stephen M. Dorsey, testified that under the notice American Mutual was entitled to seek the return of the payment made to Providence Washington. American Mutual apparently adopted this view itself.[13] In 1977, it requested from Providence Washington the return of the P.I.P. reimbursement, and Providence Washington agreed to do so. Yet, American Mutual continued to insist that the policy limits had been reduced.[14]

There was also evidence that American Mutual stood alone in reducing the policy coverage by the amount of the P.I.P. benefits. There was expert testimony that (1) American Mutual violated sound claims practice by not obtaining an early return of the P.I.P. reimbursement from Providence Washington and by not resolving a matter of coverage in favor of its insured, and (2) other insurance companies were offering the limits of the policy. Moreover, there was evidence that the Insurance Commissioner's office believed that it was the practice of the insurance industry

---

[13] In a letter to Providence Washington dated July 7, 1980, American Mutual inaccurately represented that it had settled with DiMarzo for $20,000. The letter then stated, "In accordance with the usual custom and practice among insurance Claim Departments we now ask for reimbursement of $2200 previously paid to Providence Washington Insurance Company."

[14] At this point, American Mutual had adopted contradictory positions concerning who should bear the loss of the P.I.P. payments. If it had received the return of the payment made to Providence Washington and had been able to settle DiMarzo's claim for less than the policy limits, it would have received a windfall.

not to reduce the policy limits by the amount of P.I.P. payments. Given this testimony and the distinct possibility that the failure to settle would lead to the entry of a substantial judgment against MacDonald, the judge was entitled to find that American Mutual acted in bad faith.

The judge also found that American Mutual acted in bad faith again by offering $2,800 to DiMarzo after the execution in the underlying action had been secured. We conclude that the evidence warranted such a finding. There was evidence that American Mutual made that offer, knowing that it had waived the defense of noncooperation and had failed to exercise a valid reservation of its right to disclaim liability.

Beginning with MacDonald's failure to attend his deposition in November, 1972, American Mutual had sufficient notice of the fact that MacDonald might not cooperate in his defense. Despite the opportunity to do so, American Mutual made no effort to reserve its rights.[15] Instead, American Mutual chose to proceed to a master's hearing without MacDonald. This hearing resulted in a finding against MacDonald in the amount of $75,000. Such a finding was admissible at the subsequent jury trial and constituted prima facie evidence of liability. Mass. R. Civ. P. 53 (e) (3), 365 Mass. 817 (1974) (see now Mass. R. Civ. P. 53 [i] [1], as appearing in 386 Mass. 1236 [1982]). Thus, American Mutual exercised dominion over the case at an important point which made a significant and irrevocable change in MacDonald's position without disclaiming liability or reserving rights. It therefore waived the defense of noncooperation. *Rose* v. *Regan*, 344 Mass. 223, 226-228 (1962). Additionally, it is arguable that American Mutual's attempt to enter a reserva-

---

[15] American Mutual argues that two letters dated September 13, 1971, and April 21, 1972, fall within the purview of documents characterized as reservations of rights. As to the September 13 letter, which assured MacDonald that his interests would be fully protected and that he "need give the matter no further consideration at this time," the claim is frivolous. As to the April 21 letter, it gave no hint that American Mutual was reserving its rights. Dorsey also testified that American Mutual had no other letter to MacDonald in its files that could be defined as a reservation of rights.

tion of rights after the beginning of the jury trial was ineffective to reserve its rights. "Even if [the insurer] had grounds to make a disclaimer, it was required to enter a reservation of rights or make a disclaimer *at the beginning* of the jury trial" (emphasis supplied). *Allen* v. *Atlantic Nat'l Ins. Co.*, 350 Mass. 181, 183 (1966).

American Mutual seeks to overcome its failure to take timely steps to disclaim liability or reserve its rights by arguing that MacDonald's disappearance obviated any requirement that it formally notify MacDonald before proceeding to trial. Our decisions place the insurer under a duty to take affirmative steps to secure the cooperation of a vanished policyholder. *Allen* v. *Atlantic Nat'l Ins. Co.*, *supra*. See *Imperiali* v. *Pica*, 338 Mass. 494, 498-499 (1959). American Mutual's efforts primarily consisted of repeated attempts to locate MacDonald at an address where he obviously no longer resided.[16] These efforts were not sufficient to discharge its duty. Contrast *Airway Underwriters* v. *Perry*, 362 Mass. 164 (1972).

Given American Mutual's apparent unconcern with MacDonald's presence, the judge was free to conclude that American Mutual's feeble and untimely attempt to reserve its right to disclaim liability was taken in bad faith.

D. *Causation.* American Mutual challenges the judge's finding that its offer of $2,800 after the jury verdict in the first trial was the cause of exposing MacDonald to liability in excess of the policy limits. This argument is not persuasive. The fact remains that American Mutual's refusal to settle the case for $20,000 caused DiMarzo to litigate his

---

[16] After MacDonald did not appear at his deposition in 1972, American Mutual hired an investigator who located MacDonald at the Plymouth house of correction. It therefore had affirmative knowledge that MacDonald did not reside at the Warren Avenue address. It appears that he did not receive notice of the deposition because of his incarceration.

Having successfully located MacDonald once through the use of an investigator, American Mutual might have been expected to hire an investigator again if it felt it needed MacDonald. DiMarzo's success in locating MacDonald by hiring an investigator suggests that MacDonald could have been located by American Mutual as well.

claim and to obtain a judgment against MacDonald. DiMarzo testified that he would have accepted an offer of $20,000 to settle the case up until the time that American Mutual offered $2,800. If American Mutual had offered $20,000, MacDonald would have been released from the judgment against him. The question whether the requisite causal connection has been proven is one of fact, see *Raymer* v. *Bay State Nat'l Bank*, 384 Mass. 310 (1981), and we are unable to say that the conclusions of the judge were clearly erroneous.

E. *Damages.* American Mutual claims that recovery under c. 93A should have been based on "actual damages," namely, the amount shown on the face of the policy. American Mutual argues further that the phrase "actual damages," as found in G. L. c. 93A, does not include consequential damages or foreseeable damages. Our decisions have rejected this proposition. Under c. 93A, the plaintiff is entitled to recover for all losses which were the foreseeable consequences of the defendant's unfair or deceptive act or practice. *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 850 (1983). Clearly, the judgment and execution entered against MacDonald were the foreseeable consequences of American Mutual's acts.[17]

We do think, however, that the judge erred in one respect. The policy coverage of $20,000 is available to DiMarzo under his count to reach and apply. This amount should not be included under the G. L. c. 93A counts either as part of that award or as the basis of multiple damages. The damages suffered by MacDonald, as a result of American Mutual's wrongful refusal to settle the claim, are the amount for which MacDonald became liable in excess of

---

[17] American Mutual also advances a novel argument that the jury's finding that MacDonald failed to cooperate in his defense precluded his recovery of damages under c. 93A. We think that this argument has little force in the present case where American Mutual has waived the defense of noncooperation. We do not consider whether MacDonald's failure to cooperate constituted a material breach of his obligations under the policy. In the present case, the judge did find that American Mutual's refusal to settle was not based on MacDonald's failure to cooperate.

his policy coverage. DiMarzo, as MacDonald's assignee, is entitled to c. 93A damages based only on this excess. DiMarzo, however, is entitled to recover $20,000 in damages under the reach and apply count.[18] The amount of damages should, therefore, be reduced by $20,000, with appropriate adjustments.

F. *Reasonableness of relief tendered by American Mutual.* Under c. 93A, § 9 (3), a defendant may limit his liability by making a written tender of settlement "if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner." American Mutual argues that its tender of $50,000 was reasonable. This argument, however, is a corollary to its previous contentions that DiMarzo did not demonstrate a loss of money or property and that DiMarzo's damages should be limited to $20,000. Having rejected these contentions above, we conclude that the judge did not err in finding that the relief tendered in settlement was unreasonable. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976) (determination of reasonableness is a question of fact).

II. *Evidentiary Rulings.*

A. *Exclusion of St. 1980, c. 260.* American Mutual argues that the judge erred by excluding from evidence the text of St. 1980, c. 260, which amended G. L. c. 90, § 34M. This amendment provided that the amount of coverage available should not be reduced by the payment of P.I.P. benefits. It is American Mutual's contention that this amendment created a presumption that the Legislature intended to change the existing law and, consequently, industry standards. We find no error.

American Mutual relies on cases where courts have employed the canon of statutory construction that an amendment to a statute presumably intends a change in the law. See, e.g., *Marshfield* v. *Springfield*, 337 Mass. 633, 637-638

---

[18] Since we have held that American Mutual waived the defense of noncooperation, we see no reason to deny DiMarzo recovery under count one, the reach and apply count.

(1958); *Brooks* v. *School Comm. of Gloucester,* 5 Mass. App. Ct. 158, 161 (1977). We have not always applied this canon. *Hood Rubber Co.* v. *Commissioner of Corps. & Taxation,* 268 Mass. 355, 359 (1929). Often the Legislature may amend a statute simply to clarify its meaning. *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 228 (1972), cert. denied, 409 U.S. 1108 (1973). The extent to which an amendment may properly be used to aid in the interpretation of the original statute turns on circumstances. *Boston Ass'n of School Adm'rs & Supervisors* v. *Boston Retirement Bd.,* 383 Mass. 336, 343 (1981).

In the present case, the language of the statute does not indicate that the Legislature believed it was changing, rather than clarifying, existing law.[19] DiMarzo also introduced persuasive evidence demonstrating that the amendment merely ratified existing practice in the insurance industry. Thus, the amendment provides little insight into the state of the law prior to its enactment. The judge did not abuse his discretion.

B. *Custom and usage.* American Mutual argues that the testimony concerning the custom and usage of the insurance industry should have been excluded since it was given in the form of an opinion. We have stated that the existence of a custom and usage is a question of fact and may not be proven by opinion. *Barrie* v. *Quinby,* 206 Mass. 259, 265 (1910). This rule, however, excludes testimony where the witness seeks to give his opinion as to the legal effect of the custom or usage. *Haskins* v. *Warren,* 115 Mass. 514, 535-536 (1874). The mere assertion that custom and usage exists does not call for an opinion and is therefore admissible. See 7 J. Wigmore, Evidence § 1954 (Chadbourn rev.

---

[19] Arguably, the amendment does not apply to the circumstances of the present case. Statute 1980, c. 260, amended the first sentence of the fifth paragraph of G. L. c. 90, § 34M. That sentence would have governed the rights of the parties if MacDonald had been uninsured. In the circumstances of the present case, the rights of the parties are governed by the provisions of the second sentence of that paragraph. The parties, however, have not argued the point, and we need not rely on it.

1978). The testimony to which American Mutual objects only went to whether a certain practice existed. The judge did not err.

American Mutual also argues that DiMarzo failed to lay a proper foundation for the introduction of evidence concerning a custom and usage by showing that the usage had "become notorious by the long and uniform practice of those engaged in the trade." *Caggiano* v. *Marchegiano,* 327 Mass. 574, 579-580 (1951), quoting *Barrie* v. *Quinby, supra.* The cases on which American Mutual relies are cases in which evidence of custom and usage was offered to explain or supplement the terms of a contract. Arguably, where the usage is not "notorious" by long and uniform practice, it would be unjust to say that the parties contracted with reference to it.[20] But where the usage is merely being established to determine whether a party acted in good faith or committed an unfair or deceptive act or practice, the rationale for requiring that the usage be "notorious" by long and uniform practice loses much of its force.

The issue here is more akin to the admissibility of evidence of custom and usage to establish a standard of unreasonable dangerousness, *Back* v. *Wickes Corp.,* 375 Mass. 633, 641-643 (1978), or of due care, *Stewart* v. *Roy Bros.,* 358 Mass. 446, 451-452 (1970). The admission of evidence of usage in such cases has long been left to the discretion of the trial judge. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576, 579-581 (1904). In the present case, evidence of custom and usage was admissible subject to the sound discretion of the trial judge. The evidence was properly admitted.

American Mutual also argues that the expert witnesses called by DiMarzo were incompetent to testify as to custom and usage within the insurance industry. We disagree. The issue whether a witness possesses sufficient knowledge to

---

[20] The Uniform Commercial Code has adopted a more liberal standard for the admission of evidence showing the existence of a trade usage. G. L. c. 106, § 2-202 (*a*).

testify as to custom and usage is a preliminary question of
fact for the trial judge. *Barrie* v. *Quinby, supra.* See
*Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.,*
362 Mass. 306, 309 (1972). We will not reverse the decision
of the trial judge where there is evidence to warrant his con-
clusion. *Campbell* v. *Thornton,* 368 Mass. 528, 541 (1975).
*A.J. Tower Co.* v. *Southern Pac. Co.,* 184 Mass. 472, 475
(1904). We conclude that there was sufficient evidence to
warrant the judge's finding that the expert witnesses were
qualified.[21]

C. *Business records.* American Mutual's next claim of
error is that certain records taken from the files of Mr.
Quinn and American Mutual should have been admitted in
evidence as business records under G. L. c. 233, § 78. The
records from Mr. Quinn's files were letters from Mr. Quinn
to American Mutual concerning the scheduling of the decla-
ratory judgment action, the circumstances of the accident,
and the status of a companion case. The records from
American Mutual's files were activity sheets which consisted
of notations concerning the handling of DiMarzo's claim.
There was no error.

Under G. L. c. 233, § 78, the trial judge must make four
preliminary findings of fact before a record may be admit-
ted. The record must be found to have been made (1) in
good faith, (2) in the regular course of business, (3) before
the action was begun, and (4) that it was the usual course of
business to make the record at the time of the event record-
ed or within a reasonable time thereafter. In the present
case, the judge had sufficient reason to question whether the
records were made in good faith. They were all made while

---

[21] American Mutual also argues that the judge erred by allowing one
witness to testify even though he had not been identified as an expert
witness as required by a pretrial order. There is considerable doubt as to
whether DiMarzo's counsel violated any pretrial order in this regard.
American Mutual had indicated that it intended to call the same witness.
In any event, the record does not require a finding of a wilful noncompli-
ance with a pretrial order as required by Mass. R. Civ. P. 37 (b) (2), 365
Mass. 797 (1974). Nor would such a finding require the exclusion of the
witness's testimony.

the underlying action was pending and lacked sufficient indicia of reliability to fall within the ambit of the statute. See *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 408-410 (1982) (Liacos, J., concurring). In addition, much of the information contained in the reports had little probative value and was of a prejudicial nature. Those bits of relevant evidence which could be found in the records were introduced through the testimony of Mr. Quinn and Dorsey. There was no error.

D. *Closing argument.* American Mutual contends that the closing argument of counsel for DiMarzo contained statements of a highly prejudicial nature. We see little in these statements that was improper. To the extent that counsel might have exceeded the proper bounds of argument, the judge delivered a limiting instruction. See *Luz* v. *Stop & Shop, Inc.*, 348 Mass. 198, 207-208 (1964). There was no prejudice.

III. *Attorneys' Fees and Costs.*

We are left only to consider whether the judge properly awarded attorneys' fees. American Mutual argues that the award of attorneys' fees and costs under c. 93A, § 9 (4), was excessive and unreasonable. The amount of reasonable attorneys' fees under c. 93A is within the broad discretion of the trial judge. *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979). The judge below made detailed findings as to the award following the guidelines we established in *Linthicum* v. *Archambault, supra* at 388-389, and *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978). We find no abuse of discretion.

We also reject the argument that the judge should have limited attorneys' fees to the services devoted to the c. 93A counts. Since the separate counts "represent various elements of damage arising from a single chain of events" which were recoverable under c. 93A, the judge did not err. *Simon* v. *Solomon*, 385 Mass. 91, 112 (1982).[22]

---

[22] American Mutual points out that a judgment for it was entered on count four. It argues that our remarks in *Simon* v. *Solomon*, 385 Mass.

American Mutual also contends that the award of attorneys' fees under G. L. c. 231, § 6F, was duplicative of the award under c. 93A. This award was based on American Mutual's defense to the reach and apply action and on the filing of counterclaim for attorneys' fees. The record demonstrates that the award of attorneys' fees under c. 231, § 6F, was an alternative to the award of fees under c. 93A. The plaintiff's attorneys did not submit any evidence which indicated that the reasonable value of their services, plus expenses, exceeded the amount of the award under c. 93A. We also note that the judgment entered on each count is an alternative basis of recovery. It is clear, by the terms of the order of October 26, 1981, that the plaintiff may have only one recovery under the judgment.[23] Hence, the recovery will be in the amount of $71,962, and American Mutual's point is irrelevant. In light of our discussion as to the computation of damages under the c. 93A counts and the count to reach and apply, the judgment will have to be modified. Accordingly, we vacate the judgment and remand the case for entry of a modified judgment as follows. Under count one, judgment is for the plaintiff to the extent of the policy limits of $20,000 plus interest from December 6, 1977, with costs. Under count four, judgment is for the defendant without costs. Under count six, judgment is for the plaintiff as of August 20, 1981, for $129,068.78 plus interest, the sum of which is to be doubled, together with costs of $2,392.50,

---

91, 113 (1982), require a reduction in the award. We think, however, that *Simon* did not address the circumstances before us. In *Simon,* the judge properly granted summary judgment for the defendant on one count because the plaintiff failed to state a cause of action. *Id.* at 94. Here, the judge entered a judgment for the defendant because the judgments entered in favor of the plaintiff on the other counts made it unnecessary to decide whether the plaintiff could have recovered also under count four.

[23] Arguably, some of the work generated by the filing of the counterclaim was not recoverable under c. 93A. We do not have to address the point in light of the defendant's contention that any legal fees incurred as a result of the counterclaim were de minimis.

and attorneys' fees of $71,962. The judgment entered on count six is in addition to the judgment entered on count one.[24]

The plaintiff is to have the costs of this appeal. The judge may, in his discretion, award reasonable attorneys' fees for the appeal under G. L. c. 93A.

*So ordered.*

HENNESSEY, C.J. (concurring, with whom Nolan, J., joins). I concur in the result and reasoning of the court's opinion. Nevertheless, I am constrained to add a few comments.

The money damages here are, in the circumstances, extraordinarily large. A policy of insurance affording to the insured indemnity coverage of $20,000, undoubtedly at a cost to the insured commensurate with that amount of coverage, will result in a judgment (including interest as ultimately computed) of more than $500,000 against the insurer. An argument can be made that the Legislature which created c. 93A never contemplated such a result.

That argument is inapposite. The facts as found by the jury, and later by the judge, are warranted on the evidence. The law, step by step, was correctly applied. The crucial principles are either explicit in c. 93A, or we have established them by construction of the statute, or by common law, in prior cases. For example, "actual damages" in this case clearly are in the amount of the tort judgment entered against MacDonald (*International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 850 [1983]); c. 93A is applicable in controversies between insurer and insured under an automobile liability policy (*Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72 [1977]); and rights under c. 93A are assignable (*Raymer* v. *Bay State Nat'l Bank*, 384 Mass. 310, 314 [1981]).

---

[24] Since the judgments under counts one and six are affirmed, there is no need to enter judgments under counts two, three, and five. They constitute alternative grounds for recovering the same damages.

Although c. 93A, in both content and title, is "for Consumers Protection," it can reasonably be contended that the result here is, in a sense, anticonsumer. The tort judgment for DiMarzo, including interest, was in the amount of a little more than $149,000. Yet he will now receive, including attorneys' fees and interest, nearly four times that amount. The insurer here, like many liability insurers, is a mutual company. Thus, the "consumer" DiMarzo's great good fortune is at the expense of other consumers. It may be that the threat of c. 93A may hurt the bargaining position of insurers in many other cases, even in cases where controversy is rooted in genuine differences of opinion and there is no bad faith on the insurer's part. If the large ultimate judgment here is an unexpected effect of c. 93A, it ensues, not from the application of any new or surprising legal principles, but from the large amount of actual damages, to which are applied, as permitted by statute, punitive multiple damages and a proportionate lawyer's fee. Arguments that no such results were ever contemplated, that persons insured in mutual companies, indeed in all insurance companies, are the losers, and to that extent the effect is anticonsumer, are policy arguments and are more appropriately addressed to the Legislature than to the courts.

O'CONNOR, J. (concurring). The evidence did not warrant a conclusion that American Mutual waived the defense of noncooperation or that it was estopped to rely on it. Therefore, I do not agree with the court's statement that there was evidence that American Mutual made a $2,800 offer "knowing that it had waived the defense of noncooperation and had failed to exercise a valid reservation of its right to disclaim liability." *Supra* at 99. The court's conclusion in this regard deviates substantially from established case law, and improperly restricts the right of an insurer to deny coverage to an insured who has disappeared.

The result reached by the court is correct. The jury found that MacDonald failed to cooperate, but did not spec-

ify when the noncooperation occurred. Their finding was justified by evidence that MacDonald failed to attend the jury trial after American Mutual had employed the services of a deputy sheriff who was unable to locate him for the service of a subpoena. A finding of noncooperation before that time, however, was not warranted. The company's letters to an address at which the company knew MacDonald did not reside, requesting MacDonald to attend a deposition and to attend the master's hearing, were not enough to constitute diligent, good faith efforts to secure MacDonald's attendance, and thus were not enough to establish MacDonald's failure to cooperate at that time. *Imperiali* v. *Pica*, 338 Mass. 494, 498-499 (1959). As a consequence, until the jury trial, the defense of noncooperation had not been established, and the company owed MacDonald an obligation to settle DiMarzo's tort claim within the limits of the insurance coverage if it had an opportunity to do so. The company had such an opportunity at the master's hearing and thereafter, long before MacDonald's noncooperation was established. The company's failure to settle during this time was a breach of its obligation under the insurance contract, causing loss to MacDonald for which the company properly should be held liable. MacDonald's subsequent noncooperation did not interrupt the chain of causation. Therefore, I agree with the result reached by the court.

While I agree with the result, I disagree with the court's holding that American Mutual forfeited the defense of noncooperation. In addition to the facts set forth in the main opinion, certain uncontroverted testimony of MacDonald is relevant to this issue. MacDonald testified that he lived at 430 Warren Avenue, Brockton, at the time the accident occurred. In June, 1972, he entered the Plymouth house of correction, where he remained a prisoner until 1973. After his release he resided in numerous places in Plymouth, in Quincy, on Cape Cod, in Rhode Island, and in Brockton. At no time did MacDonald notify the post office of his changes of address. After MacDonald left the house of correction he did not want to be found or bothered by anyone. Mac-

Donald was aware of DiMarzo's action against him in April, 1972, when he received American Mutual's letter advising him of the writ in excess of his policy limits. He knew where to communicate with American Mutual but did not do so at any time after DiMarzo's action was brought.

American Mutual should not be held to have forfeited its defense of noncooperation before the time of the jury trial. Until that time, it did not even have the defense. This court has never held that an insurer is precluded from disclaiming on account of the noncooperation of its insured because it did not disclaim, or reserve its right to do so, before the non-cooperation occurred. To require disclaimer whenever the insurer is on notice that the insured might not cooperate in his defense, as the main opinion appears to require, places an unwarranted burden on insurers.

Furthermore, American Mutual did nothing after Mac-Donald's noncooperation was established which operated as a waiver of the noncooperation defense or estopped the company from relying on it.[1] The general rule is that "[a] company knowing that it possesses sufficient grounds to disclaim cannot pursue the trial to a conclusion and then, an adverse result having been reached at the trial, disclaim liability." *Polito* v. *Galluzzo*, 337 Mass. 360, 365 (1958). *Salonen* v. *Paanenen*, 320 Mass. 568, 572 (1947). *Daly* v. *Employers Liab. Assurance Corp.*, 269 Mass. 1, 5 (1929). This rule is based on estoppel or waiver, *Salonen* v. *Paanenen*, *supra* at 572, *Phillips* v. *Stone*, 297 Mass. 341, 344 (1937), and is a rule of fairness. *Salonen* v. *Paanenen*, *supra*.

Fairness requires that an insurer that has continued to defend an insured after a material breach of a cooperation requirement, *in circumstances reasonably leading the in-*

---

[1] DiMarzo had the burden of proving MacDonald's cooperation or that American Mutual had waived or was estopped to rely on his noncoopera-tion. *Peters* v. *Saulinier*, 351 Mass. 609, 614 (1967). *Rose* v. *Regan*, 344 Mass. 223, 229 (1962). *Friedman* v. *Orient Ins. Co.*, 278 Mass. 596, 599 (1932). It is not relevant whether American Mutual was prejudiced. *Rose* v. *Regan*, *supra* at 226. *Polito* v. *Galluzzo*, *supra* at 365.

*sured to refrain from protecting himself in reliance on the insurer's protection,* be estopped from withdrawing that protection. See *Daly* v. *Employers Liab. Assurance Corp., supra* at 4-5. However, where, as here, an insured violates his contractual duty to cooperate and is neither misled by the insurer to rely on its continued protection, nor harmed in any other way, the insurer is not estopped from relying on noncooperation as a defense. *Peters* v. *Saulinier,* 351 Mass. 609, 615 (1967). *Salonen* v. *Paanenen, supra* at 573-574. *Phillips* v. *Stone, supra* at 344-345. *Sheehan* v. *Commercial Travelers Mut. Accident Ass'n,* 283 Mass. 543, 551-552 (1933). "In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such conse-quence might follow. . . . 'The law does not regard estop-pels with favor, or extend them beyond the requirements of the transactions in which they originate.'" *Lunt* v. *Aetna Life Ins. Co.,* 261 Mass. 469, 473 (1928), quoting from *Boston & Albany R.R.* v. *Reardon,* 226 Mass. 286, 291 (1917). There was no evidence that MacDonald cared about his defense, was induced to forgo it, or that he other-wise was harmed by American Mutual's conduct after his noncooperation. The only reason that an insurer must noti-fy an insured of its reservation of the right to disclaim liability is to avoid the unfairness that exists when the in-surer misleads the insured into relying on the insurer's pro-tection. Where there is no unfairness, because there is no misleading or reliance, there is no reason for estoppel. Here there was no unfairness in providing continued representa-tion after MacDonald's noncooperation was established.

Waiver is the intentional relinquishment of a known right. *Rose* v. *Regan, supra* at 229. *Sheehan* v. *Commer-cial Travelers Mut. Accident Ass'n, supra* at 552. The com-pany's conduct after MacDonald's noncooperation was established does not permit the inference that it intended to relinquish its right to disclaim. *Id.* at 552-553. With the

possible exception of *Rose* v. *Regan, supra,* this court has never held an insurer to have waived a noncooperation defense in circumstances not requiring estoppel, and in *Rose* v. *Regan,* inequity to the insured was the basis of the decision. In that case, writs were served on the insured by leaving the summons at the insured's former residence. The insured did not know of the service. He subsequently received notice of his defaults but he did not notify the insurer. Upon learning of the defaults through plaintiff's counsel, the insurer filed appearances and answers and caused the defaults to be removed. The court held that "the insurer's general appearance . . . made a significant and irrevocable change in [the insured's] position. . . . If the return was false [the insured] would have had an action against the sheriff to the extent of his damage. . . . But the general appearance gave a basis of jurisdiction other than the return and rendered the return inconsequential. Thus [the insured's] only possible right over, other than against the insurer, was taken away. . . . The insurer had sufficient knowledge in respect of [the insured's] breach of condition to justify a disclaimer or reservation of rights . . . . The insurer, nevertheless, exercised dominion over the case at an important point without disclaiming liability or reserving rights. Protection of its position and [the insured's] did not make imperative a general appearance without an attempt to reach [the insured]." *Id.* at 226-227. The court in *Rose* v. *Regan* distinguished the case before it from *Phillips* v. *Stone, supra,* "not only because of the absence of a threshold reservation, as at least implied in the *Phillips* case, but also because of the irrevocable change in [the insured's] rights which resulted from the insurer's action." *Id.* at 228. The insured in *Rose* v. *Regan* was not misled by the insurer, so estoppel did not apply, but the court held the insurer barred from disclaimer because of "the inequity of the result [loss of indemnity from either the insurer or the sheriff] even though there was no conscious intent to waive rights." *Id.* at 229.

In the present case the insured suffered no such loss or in-equity. Our cases hold that an insurer may disclaim coverage in the event of material noncooperation by its insured unless, by its conduct, the insurer causes a significant and irrevocable change in the position of the insured, or leads the insured to rely exclusively on the insurer's protection when he might otherwise have protected himself. There is no evidence that MacDonald was misled to rely on American Mutual's protection, or that American Mutual's exercise of dominion over the case caused MacDonald to be hurt in any way. If American Mutual had withdrawn its defense of MacDonald, the case would have proceeded to judgment in any event. There is no evidence that American Mutual's defense influenced the judgment adversely to Mac-Donald's interests. Thus, the insurer's conduct did not make a significant and irrevocable change in the insured's position, as occurred in *Rose* v. *Regan*, and fairness did not require that the noncooperation defense be forfeited. Although the result reached by the court in this case is correct, it is not correct to say that American Mutual waived its defense of noncooperation and failed to exercise a valid reservation of its right to disclaim liability.