SAMUEL L. FULLER & others *vs.* THE HOME INDEMNITY COMPANY.

Suffolk.     January 3, 1945. — March 6, 1945.

Present: FIELD, C.J., LUMMUS, QUA, WILKINS, & SPALDING, JJ.

*Bond,* Indemnity bond. *Contract,* Of indemnity, Waiver, Construction. *Larceny. Waiver. Error,* Whether error harmful. *Practice, Civil,* Exceptions: whether error harmful.

At the trial of an action of contract where an issue was, whether the maker of a check given as payment for securities then delivered to him was guilty of the statutory larceny described in G. L. (Ter. Ed.) c. 266, § 37, as appearing in St. 1937, c. 99, and where it appeared that he was notified that the drawee bank had refused to pay the

check because of insufficient funds or credit and that he had not paid the holder of the check within two days after receiving such notice, a finding of such larceny was permissible, although, without the "prima facie evidence" created by the statute, a finding might not have been warranted that the maker had intent to defraud and knowledge of insufficient funds in, or credit with, his bank; the "prima facie evidence" did not disappear upon the introduction of evidence contradicting it.

In construction of contracts of indemnity against losses, every rational intendment is made by the law to effectuate the main design of the parties, and in case of ambiguity doubts are to be resolved against the indemnitor.

A finding, that a "loss of property" by a stockbroker "through larceny" by his customer occurred "while" securities, given by the stockbroker to his messenger to be delivered to the customer, were "in transit . . . in the custody of" the messenger within the provisions of an indemnity bond, was warranted where there was evidence that, at the time the messenger handed the securities over to the customer, the customer gave him in purported payment therefor a check as to which the drawee bank reported "no funds" and where a finding of the intent to defraud and knowledge of insufficient funds or credit necessary to make out a case of statutory larceny under G. L. (Ter. Ed.) c. 266, § 37, as appearing in St. 1937, c. 99, was made permissible by a subsequent notice to the customer by the broker that the check had not been paid by the drawee bank and by a failure of the customer to make it good within two days after the notice; such intention and knowledge, when proved, had reference to the time of delivery of the check.

A denial of liability under an indemnity bond not predicated on the failure of the indemnitee to furnish proofs in the form required by its provisions was a waiver by the indemnitor of any defence based on that ground.

No reversible error was shown by the admission of evidence of statements by an employee of a corporation tending to show a waiver by it, even though the making of such statements was not shown to be within the scope of his authority, where there was ample evidence of such a waiver through correspondence with the corporation's manager.

CONTRACT. Writ in the Superior Court dated June 30, 1942.

The case was heard by *Swift*, J. The requests for rulings referred to in the opinion as denied by the judge subject to the defendant's exceptions were as follows: "1. The evidence is not sufficient to warrant a finding for the plaintiff. 2. The plaintiff has not established that the loss alleged to have been sustained by it is one for which the defendant under the terms of its contract is liable. 3. The plaintiff

has not established that the loss alleged to have been sustained by it resulted from or through larceny (whether common law or statutory) within the meaning of those words as used in the bond sued upon.   4. The evidence is not sufficient to warrant a finding that the plaintiff has complied with the terms of the contract with respect to the provisions thereof obligating it to 'file with the underwriter an itemized proof of claim duly sworn to.' . . . 6. There is not sufficient evidence to warrant a finding that the provision of the contract requiring the filing by the plaintiff of an itemized proof of claim duly sworn to was waived or that the defendant in any other manner lost its right to insist upon a compliance with said provisions."

There was a finding for the plaintiffs in the sum of $1,939.

*J. W. Blakeney, Jr.,* (*G. Sullivan* with him,) for the defendant.

*A. Sigel,* for the plaintiffs.

SPALDING, J.   This is an action of contract to recover for an alleged loss under a so called "brokers' blanket bond" issued by the defendant.   The case was tried before a judge of the Superior Court who made a general finding for the plaintiffs.   The defendant excepted to the denial of certain requests for rulings set forth above and to various rulings on evidence.

The evidence in its aspect most favorable to the plaintiffs was as follows: The plaintiffs were stockbrokers doing business in Boston.   On April 3, 1941, Thornton & Curtis, who also carried on a stockbrokerage business in Boston, ordered from the plaintiffs seventy-four shares of common stock of Eastern Utilities Associates, the price of which was to be $1,739.   On April 8, 1941, the stock was delivered to Thornton & Curtis by a messenger of the plaintiffs.   At the time of the delivery of the stock, Thornton & Curtis gave to the messenger a receipt for it and their check in the sum of $1,739, drawn on the Pilgrim Trust Company of Boston, which the plaintiffs deposited the same day in their bank.   On the following day (April 9) the plaintiffs were notified by their bank that the check had been returned to it by the Pilgrim Trust Company

with the notation "no funds." On that same day the plaintiffs notified Thornton & Curtis of this fact and demanded payment or a return of the securities, both of which were refused. At no time thereafter did the plaintiffs ever receive either the securities or payment for them.

At the close of business on April 8, 1941, and at the opening of business on April 9, Thornton & Curtis had standing to their credit with the Pilgrim Trust Company the sum of $23,489.08. On April 8 Thornton & Curtis owed the bank slightly in excess of $79,000. The bill of exceptions is not as clear on this point as it might be, but we infer that the insufficiency of funds to pay the check on April 9 arose from an application by the Pilgrim Trust Company of a portion of the deposit in reduction of the indebtedness of Thornton & Curtis to it. This resulted in overdrafts aggregating $5,308.15 on that day.

At the time the plaintiffs received the check from Thornton & Curtis they were insured under a "brokers' blanket bond" issued by the defendant. The bond covered losses of various sorts, but only that provided in clause C is pertinent to the issues here. Under this clause the plaintiffs were insured with respect to "Any loss of Property through larceny (whether common-law or statutory) . . . while such Property . . . [is] in transit anywhere in the custody of any of the . . . Employees or any other person acting as messenger for the Insured . . . such transit to begin immediately upon receipt of such Property . . . by the . . . Employee or Employees, or other person . . . and to end immediately upon delivery thereof at destination." The bond further provided that "The Insured shall give to the Underwriter written notice of any loss hereunder as soon as possible after Insured shall learn of such loss, and within ninety days after learning of such loss shall file with the Underwriter an itemized proof of claim duly sworn to."

The judge did not err in denying the defendant's requests for rulings. There was evidence that made it permissible for him to find that there had been a loss covered by the bond, namely, statutory larceny. General Laws (Ter. Ed.) c. 266, § 37, as appearing in St. 1937, c. 99,

provides that "Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money upon any bank or other depositary, with knowledge that the maker or drawer has not sufficient funds or credit at such bank or other depositary for the payment of such instrument, although no express representation is made in reference thereto, shall be guilty of attempted larceny, and if money or property is obtained thereby shall be guilty of larceny. As against the maker or drawer thereof, the making, drawing, uttering or delivery of such a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary, unless the maker or drawer shall have paid the holder thereof the amount due thereon, together with all costs and protest fees, within two days after receiving notice that such check, draft or order has not been paid by the drawee." There was evidence that property was obtained from the plaintiffs in exchange for a check drawn and delivered by Thornton & Curtis on a bank at which they did not have sufficient funds for its payment. But this without more would not constitute larceny under the statute; the person drawing the check must do so (1) with intent to defraud and (2) with knowledge that he has insufficient funds in the bank or other depositary for the payment of it. But elsewhere in the statute it is provided that prima facie evidence of the intent to defraud and knowledge of insufficient funds is supplied "unless the . . . drawer shall have paid the holder . . . [of the check] the amount due thereon . . . within two days after receiving notice that such check . . . has not been paid by the drawee." The evidence in the case at bar was sufficient with the aid of this provision of the statute to constitute a prima facie case of larceny. The "prima facie evidence" created by the statute did not disappear upon the introduction of evidence to the contrary; it remained evidence throughout the trial and warranted a finding of larceny. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 566.

A more difficult question is whether there was a larceny "in transit" within the meaning of clause C quoted above. If the larceny took place at the moment of delivery, we think a finding that it occurred in transit was warranted. This conclusion was reached by the Court of Appeals of New York in *Underwood* v. *Globe Indemnity Co.* 245 N. Y. 111, in construing a bond with a provision essentially the same as that under consideration. In that case Del Re, a salesman of the plaintiff, delivered certain securities to one Dunn, who had ordered them, and received in payment of them at the time of delivery what appeared to be a certified check but which turned out to be worthless. Dunn thereafter absconded. It was held that this constituted a larceny in transit within the meaning of the indemnity bond issued to the plaintiff by the defendant. The court said at page 115, "To hold that transit means actual movement, and not a period of rest, is too narrow a construction to give to this undertaking, and is contrary to its full meaning and scope . . . The bonds were in transit within the meaning of this policy when they were taken out for delivery, and until delivery, in the legal sense of that word, to a customer. . . . title never passed to Dunn; they were procured from Del Re by common-law larceny. Therefore, there had never been a delivery to end the transit." A similar conclusion was reached by the same court in *Hanson* v. *National Surety Co.* 257 N. Y. 216. See also note 54 Am. L. R. 488; *Ocean Accident & Guarantee Corp. Ltd.* v. *Old National Bank*, 4 Fed. (2d) 753 (C. C. A. 6th); *Koshland* v. *Columbia Ins. Co.* 237 Mass. 467, 472, et seq. It was pointed out in the case last cited, at page 471, that in contracts of indemnity against losses "every rational intendment is made by the law to effectuate the main design of the parties," and in case of ambiguity doubts are to be resolved against the indemnitor. See also *Woogmaster* v. *Liverpool & London & Globe Ins. Co. Ltd.* 312 Mass. 479, 481, and cases cited.

In the case before us the larceny took place at the time the check was delivered to the messenger in return for the securities. It is true that it is only by reason of subsequent

events, namely, the notice to the drawers by the plaintiffs
that the check had not cleared and the failure of the drawers
to pay the same within two days, that the necessary intent
and knowledge to make out a case of larceny under the
statute are supplied. But such intent and knowledge when
proved have reference to the time of the delivery of the
check.

The denial of the defendant's requests numbered 1, 4 and
6 raises the question whether the plaintiffs furnished the
defendant with "an itemized proof of claim duly sworn to"
within the time required by the bond or, if they did not,
whether this requirement was waived. It is not disputed
that on June 16, 1941, an attorney for the plaintiffs season-
ably mailed to the defendant a full statement of the loss
and the circumstances in which it occurred which he desig-
nated as a "claim." It was not sworn to, however, but was
signed by the attorney on behalf of the plaintiffs. This was
received by the defendant, and in a letter dated July 2,
1941, written by the manager of the defendant's claim
department, the "claim" was referred to and no objection
was made to it as being insufficient as to either substance or
form; liability was denied on the ground that the loss was
not covered by the bond. We think that a finding that a
more formal proof of loss was waived was amply warranted.

It is generally held that a denial of liability or a refusal
to pay by an insurance company not predicated on the
failure to furnish proofs is a waiver of any objection on that
ground. *Blake* v. *Exchange Mutual Ins. Co.* 12 Gray, 265,
271, 272. *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263,
265. *Shapiro* v. *Security Ins. Co.* 256 Mass. 358, 366. *Va-
saris* v. *National Liberty Ins. Co.* 272 Mass. 62. The reason
for this rule is well stated in the *Blake* case, at pages 271–
272, "If the notices were defective, good faith on the part
of the underwriters required them to give notice to the
insured. If . . . they put their refusal to pay on other and
distinct grounds, they are, upon familiar principles of law,
estopped to . . . rely upon the defective notices . . . There
is a time when objections in matters of form must be taken.
If they are not then made, they never can be made. . . .

The adherence to and liberal application of this principle are necessary to the maintenance of good faith and fair dealing in judicial proceedings."

The exception to the admission of certain testimony of Hannon, who told of conversations he had with one Mullen, an employee of the defendant, is without merit. The defendant invokes the familiar rule that an agent's authority cannot be proved by the declarations of the agent made out of court. See *Haney* v. *Donnelly*, 12 Gray, 361, 362; *Friend Lumber Co. Inc.* v. *Armstrong Building Finish Co.* 276 Mass. 361, 367. But the statements of Mullen did not transgress this rule. At most they tended to show a waiver of certain formalities with respect to the proof of loss. There was evidence aliunde that Mullen was employed by the defendant as a supervisor and that his duties included those of an adjuster with "authority to settle cases to a certain amount." We would be reluctant to say that what Mullen told Hannon concerning the proof of loss was not within the apparent scope of his authority. See *Alba* v. *Fireman's Fund Ins. Co.* 295 Mass. 80, 83–84; *Shapiro* v. *Security Ins. Co.* 256 Mass. 358, 365; *Wholley* v. *Western Assurance Co.* 174 Mass. 263. But it is unnecessary to decide this because, even if this evidence was improperly admitted, it would not constitute reversible error. See G. L. (Ter. Ed.) c. 231, § 132. There was, as pointed out above, documentary evidence that amply warranted, if it did not require, a finding that the formalities with respect to the proof of loss had been waived by the defendant.

*Exceptions overruled.*