ROBERT C. PETERS *vs.* MAURICE J. SAULINIER & others.

Middlesex. December 9, 1966. — January 18, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Insurance,* Motor vehicle liability insurance, Disclaimer of liability, Waiver, Estoppel. *Waiver. Estoppel.*

An operator of a motor vehicle lent to him by the husband of its owner with her implied consent was an "insured" under a policy of motor vehicle liability insurance providing guest coverage and was bound by the clause therein requiring coöperation of an insured with the insurer [611, 613], and in the circumstances, when an action against the opera-

tor arising out of an accident in which the vehicle had been demolished and a guest therein had been seriously injured was reached for trial, the insurer was entitled to disclaim liability under the policy by reason of the operator's having made it impossible for the insurer by the utmost diligence to locate him and secure his attendance at the trial [613].

The insurer in a policy of motor vehicle liability insurance providing guest coverage was not precluded by any lack of due diligence on its part from disclaiming liability thereunder by reason of alleged breach of a coöperation clause by the insured where it appeared that about nine months after an accident in which the vehicle had been demolished and a guest had been seriously injured the insurer sought out and found the insured despite his prior failure to notify it of the accident or to give it any assistance, that about three years later the insurer sent the insured a certified mail letter at his last known address respecting the trial date of an action against him by the guest, which was returned "addressee unknown," and that on the next day the insured's parents informed the insurer that his "whereabouts were unknown." [613–614]

The return, by a clerk of the Superior Court to the attorney for the insurer in a motor vehicle liability insurance policy, of the attorney's slip withdrawing his appearance for the insured in an action against him by one injured in an accident involving the motor vehicle covered by the policy, and the clerk's purported cancellation of the attorney's withdrawal by reason of his failure to comply with Rule 121 of the Superior Court (1954), did not vitiate the withdrawal where it appeared that the insured was alone responsible, through failure to make available to the insurer any address at which he could be reached, for the inability of the attorney to file the military certificate ordinarily called for by the rule. [614–615]

The record in a suit in equity to enforce the guest coverage of a policy of motor vehicle liability insurance in satisfaction of a judgment obtained in an action by a guest against the insured, who knew about eleven months after a serious accident giving rise to the action that the insurer reserved its right to disclaim liability under the policy, afforded no basis for holding that the insurer was estopped from disclaiming liability by reason of the insured's breach of the coöperation clause of the policy, or waived its right to disclaim; and, the disclaimer being justified, the suit was ordered dismissed. [615]

BILL IN EQUITY filed in the Superior Court on July 9, 1963. The suit was heard by *Tomasello, J.*

*Philander S. Ratzkoff* for the defendant Employers' Liability Insurance Company.

*Henry A. Tempone* for the plaintiff.

CUTTER, J. This is an appeal from a final decree upon a bill to reach and apply the proceeds of an insurance policy. The decree directed Employers' Liability Insurance Com-

pany (Employers') to pay $5,000 to Peters in partial satis-
faction of a judgment for $23,516.96 recovered by him
against Saulinier. The case is before us upon a report of
material facts and of the evidence.

Peters was injured in an accident on April 11, 1959, while
a guest passenger in an automobile owned by Mrs. Susan
Malaney and operated by Saulinier with Mrs. Malaney's
implied consent. Mrs. Malaney "could not operate motor
vehicles but left . . . use and other details of the . . . ve-
hicle to her husband."

Employers' issued a liability policy insuring Mrs.
Malaney, among other things, for any payments to guest
passengers receiving bodily injuries[1] as a result of the oper-
ation of her automobile with her express or implied consent.
Malaney, her husband, had lent the automobile to Saulinier.

Following the accident, Saulinier went to Malaney's
house and left a garage claim check for the automobile.
Malaney took the demolished automobile from the garage
"and sold it for junk." Malaney also went to an insurance
agency office and filled out what he believed to be an acci-
dent report. Later a letter was received from Employers'
that it would represent the Malaneys. Since the accident
Malaney had seen Saulinier only once, about 1962, "going
by [in] the street." Peters saw Saulinier once four or five
months after the accident in court in connection with a
criminal case.

The first formal notice of Peters' claim against Sauli-
nier and Mrs. Malaney was received by Employers' about
June 23, 1959. This was a letter from Peters' attorney.
No notice was sent by Mrs. Malaney to Employers' "at any
time," but on September 4, 1959, an investigator for Em-
ployers' saw Mrs. Malaney and obtained from her a supple-
mentary report of the accident[2] and a "non-waiver agree-

---

[1] Saulinier appears to have been an "insured" under the policy, par. III (a),
because his "actual use of the . . . vehicle . . . [was] . . . with . . . [Mrs.
Malaney's] permission" or that of her husband.

[2] In this report, Mrs. Malaney said that the accident had not been "re-
ported before" because she "[f]elt there was no need for it." Otherwise she
merely gave April 11, 1959, as the date when she first became aware of the
accident.

ment" under which Mrs. Malaney agreed, in effect, that Employers', by investigating the accident, was not waiving any rights to disclaim coverage.

Investigators attempted to get in touch with Saulinier and were unsuccessful in doing so until January 17, 1960. Saulinier never gave any notice to Employers' or communicated with it except when an investigator in January, 1960, finally got in touch with him. On March 16, 1960, Employers' by letter addressed to 20 Landers Street, Somerville, notified Saulinier that it had received an accident report and would investigate it "without prejudice to our rights."

On April 4, 1960, Peters started suit against Mrs. Malaney and Saulinier. Employers' trial attorneys sent to Saulinier a certified mail letter dated January 9, 1963, stating that the case had been "tentatively assigned for trial on January 14, 1963," and that if Employers' could not "obtain . . . [his] presence in [c]ourt the insurance company . . . [would] refuse to pay any verdict awarded against" him. This letter was addressed to the same Somerville address and was returned by the postal authorities marked "addressee unknown." On January 10, 1963, an Employers' investigator talked to Saulinier's father and mother who gave written statements in substance that Saulinier, "23 years of age and one of twelve children had married in 1961 and moved out of the State and that his whereabouts were unknown."

The case was reached for trial on January 28, 1963. On that day, Employers' attorney who had previously appeared for Mrs. Malaney and for Saulinier filed, before the trial commenced, a withdrawal of his appearance for Saulinier. By letter dated February 4, 1963, the clerk's office returned the withdrawal slip marked "cancelled" with a reference to Rule 121 of the Superior Court (1954).[3] The

---

[3] Rule 121 reads in part: "No attorney who has appeared for a personal defendant shall withdraw his appearance, leaving his client unrepresented, except upon his filing a certificate setting forth facts showing that his client is not in the armed forces of the United States, or upon leave granted by the court."

withdrawal slip is stamped "1963 Jan. 28 Filed in Court. Attest: Wm. P. Johnston, Assistant Clerk (Hudson, J.)." At the trial of the present suit, Employers' attorney said to the trial judge, "I did not file the military affidavit because, not knowing where Saulinier was and not knowing anything about his activities, I personally was unable to state on oath that in fact he was not in military service. I had no information . . . on which [of] my own knowledge, I could make the affidavit."

An Employers' attorney tried the case jury-waived. There was (a) a finding in favor of Mrs. Malaney, and (b) a finding for Peters against Saulinier.

1. The clauses of the insurance policy requiring prompt notice and coöperation were binding upon Saulinier as well as upon Mrs. Malaney. See *Williams* v. *Travelers Ins. Co.* 330 Mass. 476, 477.

2. Saulinier's failure to give notice of the accident to Employers' until an investigator found him on January 17, 1960, nine months after the accident, was a violation of the notice provision of the policy. *Depot Cafe Inc.* v. *Century Indem. Co.* 321 Mass. 220, 224–225. *Brackman* v. *American Employers' Ins. Co.* 349 Mass. 767, 768. Employers', of course, did get some earlier notice of the accident through Malaney. Because of our holding with respect to Saulinier's violation of the coöperation clause, we need not decide whether this notice was for Saulinier's benefit as well as for the benefit of Mrs. Malaney.

3. Saulinier's "disappearance . . . without notifying the insurer of his new address or furnishing some method by which he could be reached, constitute[d] a lack of coöperation and justifie[d] the insurer in disclaiming liability after it ha[d] failed by reasonable methods to secure the attendance of the insured as a witness at the trial." *Polito* v. *Galluzzo,* 337 Mass. 360, 363–364. Cf. *Allen* v. *Atlantic Natl. Ins. Co.* 350 Mass. 181, 182–183.

4. An insurer, of course, "cannot be relieved of liability because of an alleged breach of a coöperation clause by the insured in a situation where . . . [the insurer] has not it-

self exercised diligence and good faith." See *Imperiali* v. *Pica*, 338 Mass. 494, 498–499. We think that Employers' (a) by seeking out Saulinier on January 17, 1960, despite his prior failure to give it notice or assistance, and (b) by writing to him on January 9, 1963, and trying to find him at his last known address on January 10, 1963, had exercised due diligence. It then discovered from Saulinier's parents that even they did not know, or were unwilling to reveal, where their son then was. There is no basis for finding that Employers' did not act in good faith.

An insurer is not bound to keep in touch with each insured while waiting for a case to be reached on a trial list. It is for the named insured and other insureds who have benefited from the policy's protection to keep themselves reasonably accessible after an accident in which they have participated. See *Polito* v. *Galluzzo*, 337 Mass. 360, 362–365. See also *Morrison* v. *Lewis, ante*, 386, 390. Saulinier himself had made it impossible for Employers' by the utmost diligence to reach him. There is no showing by Peters (who had the burden of establishing Saulinier's compliance with the policy, see *Friedman* v. *Orient Ins. Co.* 278 Mass. 596, 598–599) that Employers' or its attorneys could have taken any action in the eighteen days between January 10 and 28, 1963, or earlier, which would have enabled them to reach Saulinier.[4] Peters' rights, of course, are derivative from Saulinier, and Employers' is free to assert any defence against Peters which it could have raised against a claim by Saulinier. See the *Polito* case, 337 Mass. 360, 363.

5. It has not been shown that Rule 121 of the Superior Court made ineffective the withdrawal of his appearance for Saulinier which Employers' attorney purported to make on January 28, 1963. The clerk's indorsement of the appearance withdrawal slip as "[f]iled in [c]ourt . . .

[4] Indeed, in the present proceeding commenced on July 9, 1963, service upon Saulinier was obtained, as the original Superior Court papers show, only by leaving a copy of a second subpoena "at the last and usual place of abode of . . . Saulinier, 20 Landers [S]treet, in Somerville." There was no proof that he was actually living there or that it remained his domicil.

(Hudson, J.)'' imported the trial judge's approval of the withdrawal. Such approval, if in fact given, under the rule (fn. 3) would seem to have relieved Employers' attorney from filing a certificate that his client was not in the armed forces. The purported cancellation of the filing stamp was not shown to have been authorized by the trial judge or to have been more than a routine, and perhaps misguided, effort by the clerk to obtain a certificate for the court files. Even if we were to assume that the cancellation had been authorized by the trial judge (or that the filing stamp did not import the granting of leave under Rule 121 to withdraw the appearance), Saulinier himself, by his failure to keep his parents informed of his address, was alone responsible for the inability of Employers' attorney to make the certificate ordinarily called for by Rule 121.

Saulinier knew of Employers' reservation of rights because of its letter to him of March 16, 1960. He is not shown in any way to have been harmed or to have relied to his detriment on any conduct of Employers' or its counsel. See *Lunt* v. *Aetna Life Ins. Co.* 261 Mass. 469, 473; *Phillips* v. *Stone,* 297 Mass. 341, 343–345; *Restighini* v. *Hanagan,* 302 Mass. 151, 153–155. Cf. *Rose* v. *Regan,* 344 Mass. 223, 226–229. Peters, of course, had the burden of proof of any waiver by Employers'. See the *Rose* case at p. 229.

Saulinier's conduct at all times since the accident, so far as the record shows, indicates a casual and completely indifferent attitude concerning (a) reducing to "junk" a borrowed automobile, (b) serious injuries to his guest Peters, and (c) the protection of the legitimate interests of the insurer in connection with the liability policy by which, if Saulinier had coöperated fairly, he would have been protected. The record affords no basis for holding Employers' estopped to disclaim liability, or that there has been a waiver of its right to disclaim.

6. The final decree is reversed. A new final decree is to be entered dismissing the bill.

*So ordered.*