JOHN O. LEVEILLE *vs.* THE AETNA CASUALTY AND SURETY COMPANY.

Suffolk. February 6, 1968. — March 1, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Insurance*, Notice, Products liability insurance. *Notice. Evidence*, Relevancy and materiality.

A finding that a dealer in foods for animals, the insured under a policy of products liability insurance, gave the insurer notice of an "accident" consisting of deaths of mink of a customer of the insured "as soon as practicable" as required by the policy was warranted where it appeared that the insured had no reason to believe that livers sold by the insured to the customer were the source of a food poisoning of which the mink died until a time, more than four months after the deaths of the mink, when the customer for the first time learned from his investigator that the livers were suspected of being the source of the poisoning and immediately notified the insured of the suspicion, and that the insurer on the same or the following day received notice from the insured through his insurance agent that the livers might have caused the deaths of the mink. [718–719]

In a suit in equity to reach and apply the insurer's obligation under a policy of products liability insurance in satisfaction of a judgment recovered against the insured, a dealer in foods for animals, by a customer whose mink died from poisoning after eating livers sold to the customer by the insured, where the issue was whether the insured had notified the insurer of the "accident" "as soon as practicable" as required by the policy, certain testimony by a veterinary was properly admitted as relevant to show when the insured could have known that such livers were involved as the source of the poisoning; and there was no harmful error in the admission of a letter to the insured from counsel for another customer claiming loss of mink from poisoning due to livers. [719]

BILL IN EQUITY filed in the Superior Court on September 25, 1964.

The suit was heard by *Good*, J.

*Salvatore F. Stramondo* for the defendant.

*F. Dale Vincent* for the plaintiff.

WILKINS, C.J.    The plaintiff in 1958 was in the business of raising mink for commercial use.    Fargo Packing Co., Inc. (Fargo), an original defendant but not a party to this appeal, was a dealer in food for animals.    The defendant The Aetna Casualty and Surety Company (Aetna) issued to Fargo a policy of products liability insurance in the amount of $50,000.    The plaintiff has recovered judgment, and obtained execution, against Fargo in the amount of $73,758.57, with interest, for breach of warranty of fitness of pork livers sold by Fargo and fed to the plaintiff's mink, which died of botulism, a food poisoning.

In this bill in equity to reach and apply the policy, the judge found for the plaintiff against Aetna in the sum of $49,900, with $10,317.83 interest, and costs.    From a final decree awarding damages to the plaintiff and dismissing the bill against Fargo, the defendant appealed.    The judge made a report under G. L. c. 214, § 23, of the material facts found by him.    The evidence is reported.

Aetna's principal defence arises because of two provisions of the policy: "6. NOTICE OF ACCIDENT    When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable.    Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."    "9. ACTION AGAINST COMPANY    No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy . . . ."

We state facts found by the judge or ourselves.    On February 7, 1958, Fargo sold the plaintiff a substantial quantity of frozen pork livers which the plaintiff used with

other ingredients to feed his mink. The other ingredients (tripe, lungs, fish, bone, horsemeat, wheat germ, aureomycin, and wheat germ oil) were not acquired from Fargo. About April 26, 1958, over one half of the plaintiff's mink suddenly died. The plaintiff, who had no experience with botulism, nevertheless suspected that this was the trouble. The next day he telephoned the president of Fargo, and tried to buy more livers. He said that all his mink had died; that he did not know the cause but suspected botulism from some source; and that he was going to investigate and would inform Fargo of the results.

Thereafter he engaged a veterinary, associated with the University of Massachusetts, who, after making tests in July, gave his opinion that the Fargo livers were negative as a source of botulism. The plaintiff then engaged a commercial laboratory investigator, who collaborated with the veterinary. In early September the plaintiff called the laboratory investigator, who, for the first time, made known his suspicion that the botulism poisoning had originated in a small portion of the Fargo livers. The plaintiff immediately by telephone notified Fargo for the first time that its livers were the object of suspicion as the source of botulism. On the same day Fargo notified its insurance agent that its livers might have caused the death of the mink. On that or the following day the insurance agent notified Aetna in writing. In December, 1958, Aetna disclaimed liability, claiming violation of paragraph 6 of the policy.

The judge found and ruled that Fargo did not violate paragraph 6; that Fargo gave notice to Aetna as soon as practicable under the circumstances; and that Aetna is liable for damages to the full amount of the policy.

1. The report meets the requirement that it contain every fact essential to support the decree. *Carilli Constr. Co.* v. *John Basile & Co. Inc.* 317 Mass. 726, 727. *Cohen* v. *Santoianni,* 330 Mass. 187, 190. The death of mink from food poisoning could be an "accident" within the policy. *H. P. Hood & Sons* v. *Maryland Cas. Co.* 206 Mass. 223, 225. *Hough* v. *Contributory Retirement Appeal Bd.* 309 Mass. 534,

539. *Vappi & Co. Inc.* v. *Aetna Cas. & Sur. Co.* 348 Mass. 427, 432. In order to impose a duty upon Fargo to give notice, the accident, of course, must have been one concerning Fargo in some way. Appleman, Insurance Law and Practice, § 4733, p. 21. The judge found that Fargo reasonably could not have suspected its involvement until the plaintiff's second telephone call in September, 1958; that Fargo acted with due diligence; and that notice was given "as soon as practicable." *Wheaton's Case,* 310 Mass. 504, 506. From the examination which we have made of the evidence we conclude that the judge's findings had ample support.

2. The defendant alleges two exceptions to the admission of evidence, neither of which has merit.

(a) The veterinary, on direct examination by the plaintiff, was allowed to testify to tests of pork livers he made in spring and summer, 1958, and in February, 1964. His testimony was material on the issue whether Fargo could have known before mid-September, 1958, that it was involved as the source of the poisoning.

(b) A letter of February 4, 1960, to Fargo from counsel for another customer of Fargo claiming loss of mink on or about April 15, 1958, due to botulism in pork livers, was offered by the plaintiff and admitted. To this the defendant makes the very brief suggestion that this letter was too far removed from the defendant's disclaimer in December, 1958. An argument of such brevity does not deserve lengthy discussion. As an attempt to show later corroboration it was both irrelevant and harmless.

*Decree affirmed with costs*
*of appeal.*