ROBERT POWELL *vs.* FIREMAN'S FUND INSURANCE
COMPANIES & another.[1]

No. 87-868.

Suffolk. April 12, 1988. — November 1, 1988.

Present: GREANEY, C.J., PERRETTA & FINE, JJ.

*Insurance,* Liability insurance, Disclaimer of liability, Notice, Waiver.
*Waiver. Estoppel. Notice,* Timeliness. *Words,* "As soon as practicable,"
"Occurrence."

An insurer under a policy of liability insurance which initially advised its
insured that it would undertake the defense of an action but that it would
so do under a reservation of its rights concerning the insured's failure
to give notice of the "occurrence" as required by the conditions of the
policy, was not estopped from exercising its reserved right to disclaim
coverage by its subsequent letter to the insured advising that it was
disclaiming coverage because of the insured's failure to cooperate in the
defense of the action, where the insurer, having advised the insured of
its reservation of rights under the policy from the outset, thereafter took
no position inconsistent with that reservation, and where its conduct
could not be construed as having misled, deceived, or prejudiced the
insured. [511-512]
The insured under a policy of liability insurance requiring him to give his in-
surer written notice of an "occurrence" "as soon as practicable" after its
happening was required to notify his insurer within a reasonable time
and, on the basis of undisputed facts, failed as a matter of law to comply
with such requirement as to notice with regard to a certain occurrence
which happened prior to the passage of St. 1977, c. 437, amending
G. L. c. 175, § 112, where, although the insured may have had a good
faith but mistaken belief as to his liability, the mistake could in no way
have been attributed to the insurer. [512-516] FINE, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on February 18, 1982.

The case was heard by *William C. O'Neil, Jr.,* J., on a
motion for summary judgment.

[1] Joseph C. Clowers, Jr.

*Chester A. Janiak* for the plaintiff.

*John D. Cassidy* for the insurer.

PERRETTA, J. On or about October 2, 1976, the plaintiff was injured at a North Andover nightclub owned by the insured. Although the insured was present and saw the accident, he did not notify his insurer until he was served with the plaintiff's complaint for damages in February, 1977. The insurer advised its insured that it would undertake the defense of the action but that it would do so under a reservation of its rights concerning the insured's failure to give notice of the occurrence "as soon as practicable," as required by the conditions to the policy. When the insured failed to respond to notices of deposition and to answer interrogatories, the insurer, on July 10, 1978, advised the insured that it was disclaiming coverage because of the insured's failure to cooperate in the defense of the action. The insured was defaulted, damages were assessed, and judgment for the plaintiff was entered in 1981. The plaintiff then brought this action to reach and apply the policy proceeds. The judge granted the defendant insurer's motion for summary judgment brought on the ground of the insured's noncompliance with the notice requirements of the policy. On appeal, the plaintiff argues that by disclaiming for a failure to cooperate, the insurer waived its right to disclaim for late notice and that whether notice was given "as soon as practicable" is a disputed question of material fact. We affirm the judgment, concluding that the insurer's reservation of rights entitled it to disclaim coverage on the basis of late notice and that as matter of law the insured failed to meet his notice obligations under the clear terms of the policy.

I. *The Undisputed Facts.*

"Flash powder" is a flammable substance which, when detonated by an electrical charge, produces a flash of light and smoke. Some rock bands use it during their performances. According to an affidavit signed by the insured,[2] Joseph C.

---

[2] The affidavit was signed on October 20, 1986, after Clowers assigned his rights under the policy to the plaintiff in exchange for the plaintiff's promise not to pursue recovery on his judgment against Clowers. Exclusive of interest and costs, the 1981 judgment is in the amount of $23,000.

Clowers, Jr., and filed by the plaintiff in opposition to the insurer's motion for summary judgment, the rock band performing at Clowers' nightclub on October 2, 1976, had placed dishes of flash powder at the edge of the stage. Apparently mistaking one of the dishes for an ashtray, the plaintiff ignited the powder with his cigarette. Clowers assisted the plaintiff to a restroom, helped him wash his face, and waited with him for an ambulance.

Clowers did not hear from the plaintiff or anyone else about the incident until about February 23, 1977, when he was served with the plaintiff's complaint for damages. He forwarded a copy of the complaint to the insurer. The insurer received the material on March 14, 1977. The next day the insurer's claims adjuster interviewed Clowers at his nightclub.

It appears from the transcribed notes of that recorded interview that in addition to asking Clowers about the circumstances of the incident itself, the adjuster asked why Clowers had not reported the matter sooner. Clowers replied that he had "assumed" that "if anything was to come about it, it would have been brought to my attention . . . prior to this." On March 25, 1977, the insurer wrote to Clowers, noting that notwithstanding Clowers's knowledge of the incident as of the date that it occurred, he had failed to report it to the insurer until March 14. The critical paragraph of the letter reads in full: "We call your attention to the Notice Provisions of your policy of insurance and take this opportunity to advise you that there may have been a violation of these provisions. Accordingly, we regret to advise that we are reserving our respective rights under the policy and at law. By our investigation and/or defense of this matter, we do not intend to waive our rights under the policy or at law."

On July 10, 1978, the insurer again wrote to Clowers, notifying him that it was disclaiming coverage under the policy and instructing its attorney "to withdraw from the matter entirely." The stated circumstances upon which this decision was based were: (1) that Clowers had been advised in writing in May, 1978, that counsel had informed the insurer that Clowers was not cooperating in the defense of the case; (2) that Clowers did

not thereafter respond to counsel, as requested in the earlier letter; and (3) that Clowers had failed to appear at a deposition in June.

II. *Estoppel.*

Relying upon *Blake* v. *Exchange Mut. Ins. Co.*, 12 Gray 265, 271-272 (1858), and *Fuller* v. *Home Indemn. Co.*, 318 Mass. 37, 43 (1945), the plaintiff argues that the insurer waived its earlier reserved right to disclaim for a failure to give notice by its July 10, 1978, disclaimer upon grounds unrelated to or associated with late notice, that is, the failure to cooperate in the defense of the action.[3] We think it important to note at the outset that neither of those cases relied upon by the plaintiff nor the instant one present a question of waiver within the true meaning of that word, a "voluntary intentional relinquishment of a known right." 18 Couch, Insurance § 71:2 (2d rev. ed. 1983). See also *Rose* v. *Regan*, 344 Mass. 223, 229 (1962). Contrast the insurer's letter of March 25, 1977, with those discussed in *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 99 n.15 (1983). What is at issue in this case, as in *Blake* and *Fuller, supra,* is whether the undisputed facts show that the insurer should now be estopped from exercising or asserting against the plaintiff (see *Polito* v. *Galluzzo*, 337 Mass. 360, 363 [1958]) its reserved right to disclaim coverage under the policy.

We conclude that the insurer's letter of July 10, 1978, disclaiming coverage because of a failure to cooperate, does not give rise to an estoppel. In *Blake, supra,* the insurer proceeded to defend the case without informing the insured that his notices

---

[3] Paragraph 4(c) of the conditions of the policy reads: "The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of the suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident." The judge did not, however, base his ruling on the disclaimer for failure to cooperate, the parties have made no argument on that claim, and we do not consider it.

and preliminary proofs of loss were defective. Similarly, in *Fuller, supra,* the insurer responded to the insured's claim letter by denying liability but making no objection to the subsequently asserted insufficient form and content of the letter. Thus, in each instance the insured could have taken corrective action without prejudice to the insurer had the insured not been misled by the insurer. As explained in *Milton Ice Co.* v. *Travelers Indemn. Co.,* 320 Mass. 719, 721-722 (1947): "The estoppel arises from the fact that the insurer by denying liability on other grounds has led the assured into believing that performance of the condition as to proofs [of loss] will not be required. But where the denial of liability takes place after the expiration of the period for filing proofs, it cannot be said that the assured has been induced to forego steps to prevent a default under the policy, for the default has already occurred. Consequently, there is no basis for an estoppel. [citations omitted]." See also *Star Fastener, Inc.* v. *American Employers' Ins. Co.,* 326 Mass. 728, 731 (1951).

Having advised the insured of its reservation of rights under the policy from the outset, the insurer thereafter took no position inconsistent with that reservation (contrast *Employers' Liab. Assur. Corp.* v. *Vella,* 366 Mass. 651, 656-658 [1975]), nor did it conduct itself in a manner which could be construed as having misled, deceived, or prejudiced the insured. See *Phillips* v. *Stone,* 297 Mass. 341, 344 (1937); *Salonen* v. *Paananen,* 320 Mass. 568, 572 (1947); *Peters* v. *Saulinier,* 351 Mass. 609, 615 (1967). Compare *DiMarzo* v. *American Mut. Ins. Co.,* 389 Mass. 85, 99-100 & n.15 (1983). There is no basis in the undisputed facts for estopping the insurer from exercising its reserved right to disclaim coverage on the ground of the insured's failure to comply with the notice provision of the policy.

III. *Notice of the Occurrence.*

Statute 1977, c. 437, added a sentence to G. L. c. 175, § 112, which provides that "[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occur-

rence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby." Prior to the passage of this amendment, an insured's failure to comply with the notice requirements of a policy relieved the insurer of liability on the policy even where the noncompliance caused no prejudice to the insurer. The amendment, however, is prospective only and, therefore, inapplicable to the present occurrence. See *Spooner* v. *General Acc. Fire & Life Assur. Corp.*, 379 Mass. 377 (1979). Thus, the sole issue before us on the question of notice is whether the insured complied with the terms of the policy.[4]

As the policy called for written notice of the incident "as soon as practicable" after its happening, the insured was required to notify the insurer within a reasonable time. See *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558, 565 (1972), citing *Segal* v. *Aetna Cas. & Sur. Co.*, 337 Mass. 185, 187-188 (1958). Further, as stated in *Segal*, at 188: "What is a reasonable time is a question of fact, but where the basic facts are undisputed it becomes a question of law. *Parker* v. *Middlesex Mut. Assur. Co.*, 179 Mass. 528 [1901]. *Mowles* v. *Boston Ins. Co.*, 226 Mass. 426, 429 [1917]. *Depot Cafe, Inc.* v. *Century Indemnity Co.*, 321 Mass. 220 [1947]." On the undisputed facts we conclude that as matter of law the insured did not give notice of the occurrence to the insurer within a reasonable period of time.

In his affidavit, the insured stated: "At the time of the incident I did not believe that it involved any potential claim against me, since the only persons involved were a patron and the rock band and no employee of . . . [the nightclub]. Further,

---

[4] The notice provisions are set out in paragraphs 4(a) and (b) of the conditions of the policy: "(a) In the event of an *occurrence,* written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the Company or any of its authorized agents as soon as practicable. (b) If claim is made or suit is brought against the *insured*, the *insured* shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative" (emphasis in original).

I did not believe that the incident involved any potential claim against me, since it did not involve the condition of the premises, but flash powder supplied by the rock band." The plaintiff argues that whether the insured's failure to comply with the notice condition should be excused on the basis that he acted reasonably and in good faith under the circumstances presents a question of fact.

Even if the insured had reason to believe that the incident was not an "occurrence" within the coverage of the policy[5] or that the plaintiff had no claim against him as opposed to the rock band, he was required to give notice to the insurer. See *Segal* v. *Aetna Cas. & Sur. Co.*, 337 Mass. at 188, citing *Potter* v. *Great American Indemn. Co.*, 316 Mass. 155, 157 (1944), and quoting from *McCarthy* v. *Rendle*, 230 Mass. 35, 38-39 (1918) ("It is plain that the fact, that the insured has a reasonable and bona fide doubt as to the existence of any injury or of any liability, cannot be used to deprive the insurer of his contractual right to have an immediate notice of the occurrence of an accident, regardless of the damages that may be claimed to flow from that accident"). See also 8 Appleman, Insurance Law and Practice § 4744 (rev. ed. 1981), noting that although the rule "which in effect makes the insured act at his peril in deciding the question of liability and failing to notify the insurer, even though his decision is reached in the utmost good faith" is "strict[]," it is nonetheless "sound[]" for the reason that "if the insured seeks to take it upon himself to decide that he and his insurer are not liable for the accident, he should bear the consequences of his sole decision." The consequences of such a decision are that the insurer loses the "opportunity to investigate the cause and nature of a claim while the facts are still fresh in the minds of the parties." *Segal* v. *Aetna Cas. & Sur. Co.*, 337 Mass. at 188-189, and cases therein cited.

Exceptions to the rule have been allowed, however, where the insurer has been responsible in some measure for the in-

---

[5] An "occurrence," as defined by the policy, "means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*" (emphasis in original).

sured's mistaken but good faith belief through either its conduct, see *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. at 564-565, or its use of confusing or vague terms in the policy. See *Ratner* v. *Canadian Universal Ins. Co., Ltd.*, 359 Mass. 375, 381-383 (1971); *LaPointe* v. *Shelby Mut. Ins. Co.*, *supra*. There is no claim that the insured was confused by the language of the notice provisions of the policy which, in any event, require notice of an "occurrence" as well as a claim. Contrast note 4, *supra*, with *Ratner* v. *Canadian Universal Ins. Co., Ltd.*, 359 Mass. at 381-383. Rather, the affidavit addresses a misunderstanding of the term "occurrence" as it relates in the policy to an "accident . . . neither expected nor intended from the standpoint of the insured." Note 5, *supra*.

According to the insured's affidavit, however, that is exactly what happened the night of October 2, 1976. The plaintiff put his cigarette in flash powder placed about by the rock band. Construing the definition of "occurrence" in a manner consistent with a liberal and generous reading of the insured's affidavit, we see no ambiguity or cause for confusion. There was an "accident" within the "common signification [of] the word" (see *Beacon Textiles Corp.* v. *Employers Mut. Liab. Ins. Co.*, 355 Mass. 643, 646 [1969]) which, by the insured's affidavit, was neither expected nor intended from his standpoint, no matter how the phrase "expected or intended" is construed as matter of law. See, e.g., *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81 (1984).

We think it clear from the insured's affidavit that because the incident was not expected, intended, or caused by him, he was of the belief that no claim could or would be made against him by the plaintiff. This misunderstanding, however, has nothing to do with the insurer's definition of "occurrence," even as the insured construed that term. Rather, the misunderstanding is exactly what the insurer sought to protect itself against with its clear and express requirement that it be given notice of any "occurrence" coming to the attention of the insured irrespective of the likelihood of any claim. Contrast *Ratner* v. *Canadian Universal Ins. Co., Ltd.*, 359 Mass. at 381-383. Although the insured may have had a good faith but

mistaken belief as to his liability, the mistake can in no way be attributed to the insurer. Contrast *ibid.*; *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. at 565. The insured's misunderstanding is, therefore, immaterial as matter of law. See *Segal* v. *Aetna Cas. & Sur. Co.*, 337 Mass. at 188-189.

*Judgment affirmed.*

FINE, J. (dissenting). In my view, summary judgment was improperly entered as there was an issue of material fact about which reasonable minds could differ. That issue, as to which the plaintiff would have had the burden of proof, was whether one in the position of the insured would have been reasonable in assuming that, as a result of the incident at his nightclub on October 2, 1976, a claim would not have been filed against him. In the instant case, although the incident occurred in the nightclub owned by the insured, it was a member of the rock band hired to perform who placed the dish of flash powder on the floor. No employee of the insured was involved. The present case is slightly different on the facts from *Segal* v. *Aetna Cas. & Sur. Co.*, 337 Mass. 185 (1958). It would have been clear to the insured in *Segal* that if the incident were to result in a claim, the insured, as the landlord, would have been the one against whom it would have been made.

According to the majority, the language in issue in the insurance policy means that any insured party forfeits coverage unless he promptly notifies the insurer of an incident occurring on his premises even if the incident is one that a reasonable person in the circumstances would not expect to result in a claim against him. The coverage for any but obvious claims, thus, would be illusory. It is not unusual these days for tort claims to be made which are novel and not reasonably to be anticipated by laypersons. A reasonable business owner purchasing liability insurance would naturally expect that he was buying protection against such claims. Even before the 1977 statute (St. 1977, c. 437, amending G. L. c. 175, § 112), I think the law would have protected that expectation. See *Leveille* v. *Aetna Cas. & Sur. Co.*, 353 Mass. 716, 719 (1968).