Toomey, J.
This case arrives before the court on Plaintiffs, Alan Corporation (Alan), Motion for Summary Judgment and Defendant’s, National Union Insurance Company (National Union), Motion for Summary Judgment. Underlying this action is an adverse arbitration judgment received by Alan arising out of a separate action filed against it by Rathbone Precision Metals, Inc. (Rathbone). In that action, an arbitrator deemed Alan liable for damages caused by a boiler that Alan provided and installed for Rathbone. The Hampden Superior Court confirmed the arbitrator’s award in the amount of $62,379.00. See Rathbone Precision Metals, Inc. v. The Alan Corp., et al, Civ. A. No. 92-881 (Hampden Sup. Ct. March 22, 1995) (Josephson, J). The present dispute concerns whether National Union has a duty to indemnify Alan both for the arbitration judgment entered against it and for costs and attorneys fees associated with Alan’s defense in the arbitration proceeding totalling $26,426.52. For the reasons that follow, Alan’s Motion for Summaiy Judgment is DENIED and National Union’s Motion for Summaiy Judgment is ALLOWED as to Alan’s estoppel count, but DENIED as to all other counts.
BACKGROUND
On Februaiy 14, 1992, Rathbone Precision Metals instituted action against Alan for damages arising out of the explosion of a boiler that Alan sold and installed. At the time of the accident, Alan was insured under a comprehensive general liability policy issued by National Union. Initially, National Union provided Alan with a defense to the action, albeit under a reservation of rights. After receiving a demand letter from Rathbone’s attorney, however, National Union concluded that the Rathbone’s allegations did not state claims within Alan’s policy. Accordingly, National Union ordered its counsel to withdraw from the case.
Alan then undertook to procure counsel for its defense and resolved the claim by Rathbone through binding arbitration. The arbitrator found Alan liable for the explosion and assessed damages of $62,379.00. Alan incurred defense costs consisting of $2,171.52 in expert fees and $24,255.20 in attorneys fees.
On October 22, 1996 the Superior Court (van Gestel, J.) issued a memorandum of decision and order addressing the propriety of National Union’s terminating Alan’s defense. He concluded that National Union improperly relied on Rathbone’s settlement letter in deciding to terminate the defense. The court found that the claims stated in Rathbone’s demand letter did not conclusively establish that the damages sought fell outside the policy’s coverage. As a result, Judge van Gestel granted Alan’s motion *45 for summary judgment in favor of Alan’s claim that National Union had been contractually obliged to provide Alan a defense. The court, however, denied Alan’s motion for summary judgment with respect to its G.L.c. 93A claims against National Union expressly noting that “(wjhatever the failings of National Union here, under the present state of the law in Massachusetts they do not sink to a violation of G.L.c. 93A.”
The issue now before this court is whether National Union is obliged to indemnify Alan in the amount of Alan’s liability to Rathbone and to pay for Alan’s costs of defense.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues of material fact on any relevant issue raised by the pleadings and a party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); McNeil v. Metropolitan Property & Liability Ins. Co., 420 Mass. 587, 598 (1995). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party demonstrates the absence of a triable issue, the party opposing the motion must, in order to defeat the motion, present specific references to the record establishing the existence of a genuine issue of material fact. Id. at 17. The opposing party cannot, however, rest only upon his or her pleadings or upon mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). “The happenstance that both parties move simultaneously for brevis disposition does not, in and of itself, relax the taut line of inquiry that Rule 56 imposes. Barring special circumstances, the nisi prius court must consider each motion separately, drawing inferences against each movant in turn." Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) (internal citation omitted).
Having persuaded this court (van Gestel, J) that National Union breached its duty to defend, Alan now argues that National Union owes it indemnification for the full liability imposed by the arbitrator against Alan and in favor of Rathbone. Additionally, Alan asserts that Judge van Gestel did not conclusively rule on its c. 93A claim and urges this court to revisit that issue. National Union counters that none of the claims advanced by Rathbone fall within the Alan’s policy and, therefore, no indemnification is owed. National Union further argues that Judge van Gestel’s denial of summary judgment on Alan’s c. 93A claim became the law of the case and that, accordingly, this court may not reconsider the claim. With the single exception of Alan’s estoppel count, as to which National Union shall prevail, summary judgment cannot, on the current state of the record, be employed to block trial of the remaining counts.
A. THE INDEMNIFICATION QUESTION-DIRECT DAMAGES
Analysis of the present claims must begin with the recognition that National Union breached its duty to defend. The consequences of that breach are now to be determined. The Appeals Court has observed that, “(a]n insurer that unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract. These risks not only include liability for the amount of the judgment reflecting claims covered by the policy, but also extend to bearing the burden of proof with respect to apportionment of a judgment between claims that were covered by the policy and claims that were not covered.” Palermo v. Fireman’s Fund Ins. Co., 42 Mass.App.Ct. 283, 290 (1997) (citations omitted). The insurer will satisfy its burden by establishing that its policy does not provide coverage for the underlying claims. Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 765 (1993). On the other hand, where the insurer’s attempt to apportion is speculative or arbitrary, the insurer will fail to satisfy the burden and will incur responsibility for the entire settlement. Liquor Liability Joint Underwriting Assoc. v. Hermitage Ins. Co., 419 Mass. 316, 324 (1995). We must turn now to a determination as to whether or not, in the summary judgment context, National Union is likely to satisfy that burden at trial. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991) (moving party entitled to summary judgment where party with burden at trial has no reasonable expectation of satisfying burden).
Alan and Rathbone presented their dispute to binding arbitration. The arbitrator found Alan liable and assessed damages. Notably absent from his decision, however, is an itemization of the damages — and Alan’s responsibility therefor — necessary to a final resolution of this case. If Alan’s policy covered none of Rathbone’s claims, National Union will have no duty to indemnify. If, however, some of Rathbone’s claims were covered by the National Union-Alan contract, National Union might be liable for the entire judgment, as any judicial attempt to divine how the arbitrator apportioned the damages would be speculative. See Liquor Liability Joint Underwriting Assoc., supra. Thus, in order to determine whether or not triable issues remain for judicial attention, we must address the coverage question.
National Union advances three exclusions recited in Alan’s policy to support its assertion that the policy covered none of Rathbone’s claims. The insurance policy provides that it does not apply in the following circumstances:
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
*46 (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
(2) the failure of the named insured’s products or work performed by or on behalf of the named insured to meet the level of quality, fitness, or durability warranted or represented by the named insured;
but this exclusion does not apply to the loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured’s products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
(n) to damage to the named insured’s products arising out of such products or any part of such products;
(o) to properly damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, part or equipment furnished in connection therewith . ..
Whether those exclusions bar application of the policy is the determination that will ultimately resolve this case.
The parties do not appear to contest the meaning of the exclusions. Rather, they direct their dispute to the nature of the claims asserted by Rathbone and National Union’s ability to prove that each claim is subject to an exclusion. Accordingly, the court applies the language of the contractual exclusion in its ordinary sense, accounting for what an objectively reasonable insured, reading the relevant policy language, would expect to be covered. See Liquor Liability Joint Underwriting Assoc., supra at 320 (citations omitted). Our starting point is Rathbone’s submission of its claims for damages to the arbitrator. Rathbone asserted that its damages consisted of:
A. the costs associated with the purchase of the Alan Boiler ($48,902.91),
B. the costs necessitated by having to reinstall and repair the old O&S boiler ($10,269.88),
C. the costs associated with the repair of the O&S boiler incurred by Rathbone from Bay State Boiler after the Superior boiler failed ($7,972.91),
D. the costs associated with the purchase of a Weil McLean Boiler to provide steam for Rathbone’s manufacturing needs after the Alan boiler failed ($16,8000) (sic),
E. Legal Expenses ($62,669.00), and
F. Statutory interest at 12% for 2l/2 years on $83,945.70 ($25,183.70).
Rathbone’s damages all derive from the failure of the boiler installed by Alan. Rathbone properly claimed direct damages for the costs associated with thedefectiveboilerand consequential damages for the costs associated with replacing the defective boiler. Nowhere in its statement of damages to the arbitrator did Rathbone include a claim for damage to property other than the defective boiler. Nor did Rathbone seek damages for the loss of use of other tangible property resulting from the sudden and accidental injury to or destruction of the boiler. The damages alleged by Rathbone to the arbitrator appear to be those for which exclusion (n) was designed. Standard Commercial General Liability (CGL) policies, such as the policy at bar, contain a business risk exclusion because those policies .unlikeprofessionalmalpracticepolicies .were not intended to provide coverage for direct damages resultingfrom theinsured’s providing defective workmanship. See Lusalon, Inc. v. Hartford Accident & Indem. Co., 400 Mass. 767, 771 n.6 (1987). The goal of a CGL policy is to “protect the insured from claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or product.” Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995) (quoting 2 R. Long, Liability Insurance §11.09 (2) (1993)).
The list of damages submitted to the arbitrator contains only those expenses incurred in connection with the repair and replacement of Alan’s boiler. Rathbone did not include in its list of damages an assertion that the boiler’s breakdown caused damage to the boilerroom or to other equipment in the room. Its allegations merely reflect the direct and consequential damages associated with Alan’s defective performance. Significantly, an affidavit submitted by Mark Bluver, the attorney representing Rathbone at the arbitration, contains no mention of claims for damage to property other than the boiler despite Bluver’s insistence in the affidavit that Rathbone would have presented at the arbitration evidence concerning loss of business. The only evidence submitted by Alan attesting to damage beyond that of the defective boiler is an affidavit submitted by Joel Robbins, Alan’s president, alleging that Rathbone provided testimony and argument at arbitration seeking recompense for damage to its older boiler, return lines, and control panel. Accordingly, this record is burdened with uncertainty as to what assertions were placed before the arbitrator and which of those assertions contributed to this award.
In view of the conflicting evidence surrounding the arbitration proceedings, the court finds that genuine issues of material fact exist as to the nature of damages sought at arbitration by Rathbone and the consequent applicability vel non of the contractual exclusions. If Rathbone did not seek damages other than those associated with the boiler Alan installed, then National Union will be entitled to judgment at bar because the business risk exclusion would avert coverage relative to the Alan-installed boiler. However, if it is established that Rathbone *47 argued for damages to property other than the boiler, then National Union will be responsible for the entire award by the arbitrator absent a persuasive showing at trial that the arbitrator did not consider such claims in rendering his decision, in which case National Union will be liable only for those claims by Rathbone fallingwithin the arbitrator’s calculus. Those factual questions are genuine and material and are deserving of resolution by the finder of fact at trial.
B.THE INDEMNIFICATION QUESTION-CONSEQUENTIAL DAMAGES
In addition to direct damages, Rathbone alleged consequential damages. The Bluver affidavit reveals that Rathbone sought consequential damages including, but not limited to, loss of business, legal fees, and statutory interest. Bluver explained in his affidavit that he could not recall whether witnesses were called to testify as to business losses, but had no reason to think that Rathbone would not have argued these claims. National Union argues that any consequential damages alleged by Rathbone necessarily derive from the failure of Alan’s boiler and, therefore, do not qualify as property damage under the policy. See Sting Security, Inc. v. First Mercury Syndicate, Inc., 791 F.Supp. 555, 562 (D.Md. 1992) (economic loss must result from physical injury to tangible property other than insured’s product or work).
This dispute returns the court to its initial inquiry concerning what claims the arbitrator considered in awarding Rathbone damages. If none of the claims before him fell within the policy, then, a priori, the economic loss could not have resulted from properly damage for which Alan was insured. Conversely, if Rathbone presented some claims that the policy did cover, then National Union will face the daunting task of proving, without a written arbitration decision, that the arbitrator awarded economic loss damages based on property damage that the policy does not cover. In any event, the disputed issues of material fact that precluded summary judgment on Alan’s claim for coverage of Rathbone’s recovery of direct damages similarly operate to preclude entry of summary judgment on Alan’s claim for coverage of consequential damages.
C.THE G.L.c. 93A QUESTION
In addition to direct and consequential damages, Alan seeks damages pursuant to G.L.c. 93A. In his earlier opinion, Judge van Gestel denied Alan’s motion for summary judgment and expressly found that National Union’s conduct did not warrant sanction under c. 93A. See Alan Corp. v. National Union Fire Ins. Co., Civ. A. No. 94-2376 (Worcester Sup. Ct. Oct. 22, 1996) (van Gestel, J). National Union argues that this decision has become the law of the case and urges the court not to revisit the issue.
The Appeals Court instructs that “(t)hough there is no duty to reconsider a case, an issue, or a question of fact or law, once decided, the power to do so remains in the court until final judgment.” Serody v. Serody, 19 Mass.App.Ct. 411, 412 (1985). While a second judge hearing a motion previously decided may have the power to undo that decision, the second judge should approach the task reluctantly. Id. In the present case, the court can find no compelling reason to upset the decision issued by Judge van Gestel. National Union may have prematurely withdrawn its defense of Alan but, as the van Gestel decision makes clear, that termination resulted from a plausible interpretation of its policy. See Lumberman’s Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468-69 (1995) (granting insurer summary judgment on c. 93A claim). Accordingly, Alan’s motion for summary judgment on the c. 93A count is denied.
D.THE ESTOPPEL QUESTION
Finally, Alan contends that it suffered numerous prejudices from National Union’s withdrawal of defense and that the prejudice estops National Union from denying coverage. Alan argues that untaken depositions, an unauthorized offer by National Union to settle, the forced use at arbitration of an expert selected by National Union, and new counsel’s inability properly to assess the case prejudiced Alan’s ability adequately to represent itself against Rathbone. Accordingly, Alan concludes, National Union ought to be estopped from contesting Alan’s assertion of coverage.
We are taught that “(i]n order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm.” Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 635 (1992) (citations omitted). Where the insurer reserves its rights and takes no position inconsistent with that reservation, estoppel is an inappropriate remedy absent conduct that deceives, misleads, or prejudices the insured. See Powell v. Fireman’s Fund Ins. Co., 26 Mass.App.Ct. 508, 512 (1988). In the present case, it does not appear that National Union’s conduct caused sufficient prejudice to Alan to warrant burdening National Union with the yoke of estoppel.
From the outset of the case, Alan’s liability to Rathbone was not the flagship of Alan’s defense. Internal memoranda from National Union reveal that its counsel calculated the settlement value of the case at $70,000. Because the arbitrator awarded damages of $62,379.00 Alan cannot reasonably claim prejudice in the amount of judgment. As to Alan’s allegations that its own counsel could not properly assess the case and could not conduct appropriate discovery, the record demonstrates that National Union informed Alan of its withdrawal in a letter dated November 29, 1993 and that the arbitration was not held until February 20, 1995. Alan’s *48 counsel had ample time to familiarize himself with the details of the case and obtain additional discovery as necessary. Moreover, National Union undertook the initial defense with a reservation of rights, a circumstance which ought to have alerted Alan that National Union might terminate coverage at anytime. Accordingly, the court finds insufficient facts on which to allow recovery by estoppel.
ORDER
It is therefore ORDERED that Plaintiffs Motion for Summary Judgment be DENIED and that Defendant’s Cross-Motion for Summary Judgment be ALLOWED as to Plaintiffs claims based on estoppel, but DENIED as to all other claims.